MIDDLETOWN TRUST COMPANY, TRUSTEE, *vs.* MARGARET FAHERTY GAFFEY ET ALS.

First Judicial District, Hartford, October Term, 1920.
WHEELER, C. J., BEACH, CASE, CURTIS and BURPEE, Js.

The term "issue" in a will, unless it appears from the context of the will and the circumstances surrounding the testator to have been otherwise used, will be construed as a word of purchase and not of limitation, and thus used its primary and presumptive meaning is that of heirs of the body, including descendents in every degree; but where the context and surrounding circumstances disclose the testator's intent to use the term in its more restricted meaning, it will be construed, so as to effectuate that intent, to be synonymous with children or grandchildren.

In making a devise over from his own child to his child's child, there is a presumption—valuable only where his intention is not otherwise disclosed—that the testator intended a child of his own blood, and did not intend his estate to go to a stranger to his blood.

Where a gift is made, not to the testator's own children, but to his son's children, there is no presumption, from the fact that he is presumed to know our law of adoption, that an adopted child of the son was intended to take; and when his intention, ascertained from the terms of the will and all the surrounding circumstances, including the adoption law, is not shown to include such adopted child in the gift, the word "children" will be confined to its ordinary meaning of natural children of the blood.

Our law of adoption is of the broad kind by which the adopted child thereby becomes the child in name and in law of its adopting

parents, with all the reciprocal rights and duties, including the right of inheritance, between parents and child and their relatives, as though such child was the natural child of such adopting parents. A testator in his will left the income of a certain sum to his son T for life with a gift over to T's "children" on T's death with "issue" surviving, and after a small legacy for the care of his cemetery lot divided the residue into three parts, of which he gave one each to his children H and D, and the other in trust for his son E for life and on E's death with issue surviving to use the income for such issue until the youngest became twenty-one, then to divide the fund among them, but if E died without issue surviving him, then on E's death to divide the fund between H and D, their heirs and assigns absolutely. After the testator's death H died, and thereafter E duly adopted a child and died, leaving only his widow and this child surviving him. In a suit for the construction of the will it was *held:*—

1. That the testator used the term issue as meaning children.
2. That E's adopted child took nothing under the will.
3. That since H and D took interests in the fund of which E had the life use which were vested and alienable and transmissible on the testator's death, this fund on E's death should be paid one half to H's administrator and the other half to D.

*(Two judges dissenting.)*

Argued October 6th, 1920—decided March 10th, 1921.

ACTION of interpleader to determine the rights of the respective respondents in and to the principal of a testamentary trust fund held by the plaintiff, brought to and tried by the Superior Court in Middlesex County, *Hinman, J.;* facts found and judgment rendered in favor of Dora Dillon and Herbert Gaffey, or their representatives, from which the respondent Margaret Faherty Gaffey appealed. *No error.*

Thomas M. Gaffey, of New London, deceased on the        day of March, 1905, leaving a will executed March 10th, 1905, and four children, Thomas F. Gaffey, Herbert H. Gaffey, Dora E. Dillon, and Eugene F. Gaffey, as his only heirs at law and next of kin. The will was duly admitted to probate. The testator bequeathed $15,000 to his son Herbert H. Gaffey and his daughter, Dora E. Dillon, in trust, to use the

income for the benefit of his son Thomas during his life "and on his death with issue surviving to use and expend said income and profit for the benefit equally of each of the children of my said son Thomas until the youngest surviving child shall have arrived at the age of twenty-one years, then to divide and pay over to said surviving children said trust fund, share and share alike, but if none of his children shall survive my son Thomas, then on the death of my son Thomas to divide said trust fund equally between my said son Herbert and said daughter, Dora, their heirs and assigns to be theirs absolutely."

After making a small bequest to St. Mary's Cemetery, the testator divided all the remainder of his property into three equal parts, one of which he gave to his son Herbert and one to his daughter, Dora. The third part he gave, by the seventh clause, to Herbert and Dora, in trust, "to use and expend the income and profit thereof for the benefit of my son Eugene F. Gaffey, during his life and on his death with issue surviving to use and expend the income and profit thereof for the benefit of such issue if any there be, until the youngest of such issue shall have arrived at the age of twenty-one years, then to divide and pay over to such issue said equal one-third part, share and share alike, but if my son Eugene should die without issue, or if none of his issue should survive him, then on his death to divide said equal one-third part equally between my said son Herbert and my said daughter Dora, their heirs and assigns absolutely."

Upon the distribution of the estate, personal property of the appraised value of $24,606.10 was distributed to said Herbert H. Gaffey and Dora E. Dillon as trustees under the seventh clause of the will.

Thomas F. Gaffey died subsequent to the death of his father, Thomas M. Gaffey, and no adminis-

trator has been appointed on his estate. On January 20th, 1917, Herbert H. Gaffey died, and on February 5th, 1917, his widow, Edna Gaffey, duly qualified as administratrix on his estate.

On August 10th, 1910, the plaintiff was duly appointed as trustee under said seventh clause and duly qualified as such to succeed said Herbert H. Gaffey and Dora E. Dillon, who had resigned said trust, and they turned over to the plaintiff property appraised at $24,530.55 as the principal fund of the trust, and the plaintiff holds property of that value as the principal fund of said trust.

On September 21st, 1917, Eugene F. Gaffey and Mary F. Gaffey, his wife, entered into a written agreement with James and Catherine E. Faherty for the adoption of their daughter Margaret, which agreement was duly approved by the Court of Probate for the district of Middletown on October 5th, 1917, and said Margaret Faherty thereupon became the legally adopted child of said Eugene F. and Mary F. Gaffey.

On October 23d, 1917, Eugene F. Gaffey died, leaving surviving him a widow, Mary F. Gaffey, and Margaret Gaffey, his adopted daughter. No administrator has been appointed over his estate.

Various questions and claims have been made by the parties as to the construction of the seventh clause, as follows:—

"1st. Is said Margaret Faherty Gaffey, the adopted child of said Eugene F. Gaffey, his issue within the meaning of that word as it is used in the said seventh clause of the will of Thomas M. Gaffey.

"2d. Should the trustee under said clause continue to hold said fund and to use and expend the income thereof for the benefit of said Margaret Faherty Gaffey until she shall have arrived at the age of twenty-one years, and then pay over the principal

to her or her heirs or should the trustee now pay over said principal fund to the remaindermen named in said clause or their representatives.

"3d. In the event that it is held that said Margaret Faherty Gaffey is not 'issue' within the meaning of said clause and that said fund should be now paid over to the remaindermen named or their representatives, did said Herbert H. Gaffey at the date of his death have a contingent remainder interest in said fund or a vested remainder subject to be divested upon the death of Eugene F. Gaffey, leaving issue.

"4th. In the event that it is held that he had a contingent remainder which never vested has the bequest to him now lapsed and if so has it become intestate estate.

"5th. In the event that it is held that the trustee should pay over said trust fund to the remaindermen or their representatives to whom and in what proportions should said fund be paid."

The trial court adjudged the construction of this clause as follows:—

"1. Said Margaret Faherty Gaffey is not the issue of said Eugene F. Gaffey within the meaning of that word as it is used in the seventh clause of the will of Thomas M. Gaffey.

"2. The trustee should now pay over the principal trust fund and accumulated interest thereon created by the seventh clause of the testator's will to the remaindermen, Dora Dillon and Herbert H. Gaffey, the remaindermen named in the seventh clause, or to their representatives.

"3. Herbert H. Gaffey at the date of his death had a vested remainder interest in the trust fund created in said seventh clause of said will which was subject to be divested upon the death of Eugene F. Gaffey leaving issue.

"4.   The trustee should pay one half of said trust fund and accumulated interest created in said seventh clause to Edna Gaffey, administratrix of the estate of Herbert H. Gaffey and one half of said trust fund to Dora Dillon."

*Gustaf B. Carlson,* for the appellant (respondent Margaret F. Gaffey).

*Frank L. McGuire,* for the appellees (respondents Edna Gaffey, administratrix, Dora Dillon, and Dora Dillon, executrix).

WHEELER, C. J.   The entire decision rests upon the single question whether the term "issue," as used in the seventh clause of this will, includes the adopted child of Eugene F. Gaffey, the son of the testator.   The term "issue," in a will, is to be construed as a word of purchase, unless it appears from the context and surrounding circumstances to have been used as one of limitation.   Its primary, and therefore presumptive, meaning, when used as a word of purchase, is heirs of the body, and includes descendants in every degree. But when the intention of the testator, as evinced by the context and surrounding circumstances, indicates that he used the word "issue," not in its larger significance, but in its more restricted sense, it will be construed so as to effectuate the testator's intent and to be synonymous with children or grandchildren. *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33; *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 Atl. 535; *Mitchell* v. *Mitchell,* 73 Conn. 303, 47 Atl. 325.

In the second clause of his will the testator establishes a trust for the benefit of his son Thomas, practically identical with the trust established in the seventh clause for the benefit of his son Eugene, except that the trust for Thomas provides that upon

his death with issue the income of the trust shall be used for the benefit of the "children" of Thomas, whereas the trust for Eugene provides that upon his death with issue the income of the trust shall be used for the benefit of the "issue" of Eugene.

The testator used the term "issue" in the seventh clause in the restricted sense in which he used the term "children" in the second clause. The terms are used interchangeably and should be so construed in these clauses. *Duckett's Estate*, 214 Pa. St. 362, 63 Atl. 830; *Russell* v. *Hartley*, 83 Conn. 654, 664, 78 Atl. 320. So that our question is whether the testator, in the provision in this trust for the children of Eugene, included the adopted child of Eugene as a sharer in his bounty.

Language in a will susceptible of different meanings is to be given that meaning which will most nearly effectuate the testator's intention. The language is to be construed in connection with the entire will and in the light of the circumstances surrounding it which were probably known to the testator.

The meaning in which the testator used the term "issue" or "children" in this clause is not to be found alone in the statute of adoption (§ 4879), but by ascertaining the testator's intention. And one of the factors in reaching this end must be the consideration of the fact that the testator must be assumed to have made his will in the knowledge of the existence of our statute of adoption. "Children," when used in a will, may include adopted as well as natural children, or it may mean natural children. Its meaning in a will is wholly a question of what the testator's intention was. In every case of doubtful construction in a will of the word "children," the law favors ancestral blood by favoring such an interpretation as will permit the testator's estate to pass to his own blood.

In making a devise over from his own child to his child's child, there is a presumption that the testator intended a child of his own blood, and did not intend his estate to go to a stranger to his blood. *Woodcock's Appeal,* 103 Me. 214, 217, 68 Atl. 821; *Knowlton* v. *Atkins,* 134 N. Y. 313, 321, 31 N. E. 914; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11, 22, 55 N. E. 311. Valuable an aid as this presumption may be in many cases of doubtful construction when the intention of the testator is not otherwise disclosed, it is unimportant where it is. *Butler* v. *Flint,* 91 Conn. 630, 636, 101 Atl. 19.

Search the will as we may, we find nothing to suggest that the testator intended to include the adopted child of Eugene among the children of Eugene. On the contrary, the terms of the will manifest the testator's intention to give to his own blood and to none other. Strangers may not share in his bounty. Aside from the payment of his debts and funeral expenses and a small legacy for the care of his lot in the cemetery, he gives $15,000 in trust for his son Thomas for life with remainder over to his children, but if none survive Thomas he directs that the trust fund be divided equally between his son Herbert and his daughter, Dora, their heirs and assigns. Of the remainder, one third he gives to his son Herbert, one third to his daughter, Dora, and the remaining third he gives in trust to Herbert and Dora for the benefit of his son Eugene with remainder over to his issue, by which was meant children, as we have seen, and in the event of Eugene dying without issue, then to Herbert and Dora, their heirs and assigns. He evinces his preference for his blood by his gifts, and by making his son Herbert and his daughter, Dora, trustees of the trusts provided for in, and executors of, the will.

The plan of the will was to give Herbert and Dora

substantially the testator's entire property, in the event that his sons Thomas and Eugene died without children surviving them. And as if to emphasize his preference for his blood, the testator gives the body of these trust funds, upon the death of the *cestui que trusts* without children surviving them, to Herbert and Dora, their heirs and assigns.

If Thomas or Eugene could, by adopting a child, divest the interest of Herbert and Dora, they could destroy the testator's entire plan of will. The interest of Herbert and Dora vested on the testator's death, and their interests were alienable and transmissible. *Bartram* v. *Powell*, 88 Conn. 86, 90, 89 Atl. 885; *Beckley* v. *Leffingwell*, 57 Conn. 163, 17 Atl. 766; *Butler* v. *Flint*, 91 Conn. 630, 638, 101 Atl. 19.

Is it at all probable that this testator intended to give to Herbert and Dora vested interests of this character, and at the same time placed it in the power of Eugene and Thomas to defeat these interests vested by his own act? He denies to Eugene and Thomas the right to control their trust fund or to dispose of it by will. Is it at all probable that he intended to give to them the power, by the fact of adopting a child or children, to dispose of a part and perhaps the entire trust funds?

The testator exercises his right to dispose of his entire estate, and his will in its entirety makes clear his intention that only the children of his blood and the children of their blood should enjoy his bounty. *Russell* v. *Hartley*, 83 Conn. 654, 78 Atl. 320. If children includes an adopted child, then nearly one half of the testator's property might be diverted to strangers to the testator's blood. This is a contingency repulsive to the plan of the will, and one which the will itself shows could not have been in the contemplation of the testator.

The trust for Eugene is a spendthrift trust, and the trustees have power to give or withhold any or all of the income from Eugene. And this is another circumstance indicating that the testator did not intend to give Eugene the power of disposition of the body of the trust fund when he restricted his power to expend the income for himself.

The testator died in March, 1905. Eugene adopted a child on October 5th, 1917, a few days prior to his decease and over twelve years subsequent to the death of his father, the testator. This is a circumstance of controlling importance. The testator did not know of the adoption. And we think it inconceivable that he intended by his bounty to the children of Eugene to include one who might, by adoption, years after his own death, become a child of Eugene.

The brief for the appellant, the adopted child of Eugene, accepts the testator's intention at the making of his will, as ascertained from the terms of the will read in the light of the surrounding circumstances, as the true guide, but it draws exactly contrary conclusions from those we have drawn. The fundamental difference arises in the assumption by the appellant of the existence of a presumption.

Since the testator is presumed to have known our law of adoption, the brief contends that he is presumed to have used the term "child" in his will, or its equivalent as here used, issue, as including a child by adoption, unless the will or its attendant circumstances show the contrary.

Statutes of adoption are of two classes, the restrictive and the broad class. Our statute (Rev. 1918, § 4879), as it existed when this will was executed and probated (Rev. 1902, § 234), belongs to the broad class. By it the adopted child becomes, by the fact of adoption, the child in name and in law of its parents, with all

the reciprocal rights and duties existing between them as between natural child and parent, and with the right of inheritance between parent and child and their relatives, the same as though such adopted child were the natural child of such adopting parent.

If this presumption were ever to arise, it would be out of a statute as broad as ours. But we do not think such a presumption can arise from the mere assumption of knowledge of the law of adoption. The existence of the adoption law, being part of the law at the time the testator executed the will, is one of the facts to be considered among the circumstances and environment surrounding him. The terms of the will, read in the light of the circumstances, are the source of the intention of the testator. This is an inference to be drawn from all the facts; it may not be drawn from the single fact of the existence of a broad law of adoption. The better authority accords with this view.

"Where the grantor or testator is the adopting parent it is reasonable to presume that the adopted child was within the intended bounty of such grantor or testator. But where he is a stranger to the adoption such presumption does not prevail." *Wilder* v. *Butler*, 116 Me. 389, 392, 102 Atl. 110.

We find the large majority of the authorities hold that the question of the right of a child adopted after the testator's death, and where the testator is a stranger to the adoption, to take under his will is one of intention on his part. And this must appear from the reading of the will in the light of the surrounding circumstances; otherwise the word "children" will be confined to its ordinary meaning, natural children of the blood. *Puterbaugh's Estate*, 261 Pa. St. 235, 104 Atl. 601; *Parker* v. *Carpenter*, 77 N. H. 453, 92 Atl. 955; *Matter of Leask*, 197 N. Y. 193, 90 N. E. 652; *Lichter* v. *Thiers*, 139 Wis. 481, 121 N. W. 153; 5 Amer. Law

Rep. Anno. 1280 note; *Wilder* v. *Butler,* 116 Me. 389, 102 Atl. 110.

Among the opinions holding the contrary view may be mentioned: *Hartwell* v. *Tefft,* 19 R. I. 644, 53 Atl. 882; *In re Truman,* 27 R. I. 209, 61 Atl. 598; *Eureka Life Ins. Co.* v. *Geis,* 121 Md. 196, 88 Atl. 158.

Our conclusion accords with that of the trial court. There is no error.

In this opinion CASE and BURPEE, Js., concurred.

BEACH, J. (dissenting). Our statute of adoption (§ 4879) declares that when its provisions are complied with, "such child shall thereupon become the legal child of the person by whom it is adopted, and he shall become its legal parent." The appellant is therefore the legal child of Eugene F. Gaffey, and Eugene, before his death, was her legal father. As pointed out in the opinion, the testator evidently uses the word issue in the seventh paragraph as meaning children. Admittedly the children thus referred to as issue are the children of Eugene F. Gaffey at the time of his death. And since the testator is presumed to have known the law and to have made his will with reference to it, I think the word "issue" in the seventh clause includes, in intention and in law, after-adopted as well as after-born children.

In this opinion CURTIS, J., concurs.