ILSE BEER SCHAPIRA *v.* CONNECTICUT BANK AND TRUST COMPANY ET AL.
(13102)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued June 2—decision released July 21, 1987

*Jeffrey L. Crown,* for the appellant (plaintiff).

*P. Michael Lahan,* for the appellee (defendant Milton L. Jacobson).

*Steven M. Greenspan,* for the appellee (named defendant).

PETERS, C. J. The sole issue on this appeal is whether an adopted child is entitled to a remainder interest distributable in accordance with the terms of an irrevocable inter vivos trust created in 1919. The plaintiff,

Ilse Beer Schapira, brought an action for a declaratory judgment to determine whether she, as an adopted child, could take as "issue then living" under a trust agreement providing for distribution upon the death of a life beneficiary.[1] The defendants are the Connecticut Bank and Trust Company, which serves as the trustee of the trust, and Milton L. Jacobson, who, as conservator of the estate of Eva Virginia Smith, claims a competing right to the entire remainder interest. After a trial to the court, judgment was rendered for both defendants. The plaintiff appealed to the Appellate Court. This court transferred the appeal to itself. We find no error.

The facts are undisputed. On May 9, 1919, Leonard O. Smith, as settlor, created an inter vivos trust (the trust) and named the predecessor of the defendant Connecticut Bank and Trust Company as trustee. The corpus of the trust consisted of 471 shares of capital stock in several major oil companies. The trust directed the trustee to divide the corpus into three equal parts and to distribute the income equally among three beneficiaries: the settlor's wife, Eva Crowell Smith, and two daughters, Eloise Crowell Smith (known after marriage as Eloise C. S. Beer), and Eva Virginia Smith. Pursuant to the third article of the trust, after the death of the settlor's wife in 1943, her one third interest was divided equally between the two daughters.[2]

---

[1] In count one of her complaint, the plaintiff also sought a declaratory judgment determining whether she was entitled to the income and principal of a testamentary trust created under article fourteen of the will of Leonard O. Smith. That count, however, was withdrawn by the plaintiff prior to trial and is not presently before us.

[2] Article three of the trust provided: "The income from one of said parts, being one-third of the income, shall be paid to Eva Crowell Smith, the wife of the Donor, during her life, and upon her death, her said part shall be divided equally, and one-half paid and delivered to one of the Donor's daughters named below, or if deceased, to her issue per stirpes, and the other half paid and delivered to the other of said daughters, or if deceased, to

Article four of the trust established the rights of Eloise Crowell Smith, the settlor's daughter, and her issue.[3] The trust directed the payment of income to Eloise during her life. Upon her death, her share of the principal was to "be divided, per stirpes, among her issue then living" unless she was survived by a child or children under the age of twenty-one. In the event that Eloise died without issue and was not survived by her mother, her part of the principal was to be paid to the settlor's other daughter, Eva Virginia Smith.

Finally, article six of the trust provided that if both daughters died without issue and neither was survived by their mother, the assets were to be distributed "to the next of kin of the said Donor" as defined by state law in effect at the time of distribution.[4] This provision does not govern the distribution of the assets because Eloise is survived by her sister Eva.

her issue per stirpes. If either daughter should be deceased, leaving no issue then living, all said part shall be paid and delivered to the other daughter, or if deceased, to her issue per stirpes."

[3] Article four of the trust provided: "The income from one of said parts, being one-third of the income, shall be paid to Eloise Crowell Smith, one of the daughters of the Donor, during her life, and upon her death the income from said part shall be used for the support and education of her issue until her youngest living child shall reach the age of twenty-one years, when said part shall be divided, per stirpes, among her issue then living. In case said daughter should die leaving no issue living, or in case all of her issue should die before the time above provided for distribution, her said part shall be divided equally, and one-half paid and delivered to the said wife of the Donor, and the other half paid and delivered to the Donor's daughter, Eva Virginia Smith, or if deceased, to her issue per stirpes. If the Donor's said wife should then be deceased, all said part shall be paid and delivered to said Eva Virginia Smith, or if deceased, to her issue per stirpes. If said Eva Virginia Smith should then be deceased, leaving no issue then living, all said part shall be paid to the Donor's said wife."

[4] Article six of the trust provided: "In case of the death of the survivor of the Donor's said wife and two daughters leaving no issue of said daughters to whom said funds may be distributed, or in case of the death of all of the issue of any daughter before the date set for distribution to such issue leaving neither of said three persons or any issue of said daughters then living, the said funds in the Trustee's hands shall be distributed to

The plaintiff was the niece of Sanel Beer, whom Eloise married in 1942. The plaintiff and Sanel Beer had immigrated together to the United States from Austria in 1938. Sanel and Eloise C. S. Beer formally adopted the plaintiff in 1956; she was then thirty-six years old. On September 5, 1979, Eloise died, leaving the plaintiff as her only child.

It is apparent from these undisputed facts that the settlor of the trust, who died in 1925, had no knowledge of the plaintiff's adoption. The plaintiff contends that he nonetheless intended to include her within the class described as "issue then living" at the time of the death of Eloise. The defendant Jacobson, as conservator for Eva, argues, to the contrary, that Eloise died without issue and that Eva is therefore entitled to the one half interest created initially for the benefit of Eloise and her "issue then living."

The trial court rendered judgment for the defendants. The court determined that the term "issue" primarily signifies descendants of the body, and that in the absence of a contrary intent of the settlor, adopted children are presumed to be excluded. Applying the so-called "stranger to the adoption" doctrine, the court ruled that because the settlor was not himself the adopting parent, and the adoption occurred after the settlor's death, the plaintiff had failed to prove that the settlor specifically meant to share his bounty with adopted grandchildren. Additionally, the court concluded that the law in effect at the time of distribution of the trust in 1979 did not warrant a judgment in favor of the plaintiff. Finally, the trial court held that the trust's direction, in article six, to distribute the corpus to statutory

the next of kin of the said Donor, said next of kin to be ascertained in accordance with the laws of the State of Connecticut at the time of such distribution, and the method of distribution to be in accordance with said laws, as if said Donor had died at the date of said distribution possessed of said funds."

heirs in the event that both daughters died without issue did not illuminate the meaning to be ascribed to "issue" under article four.

On appeal, the plaintiff claims that the trial court erred in: (1) excluding her from the meaning of "issue" in article four of the trust; (2) failing to apply the law in effect at the death of the life beneficiary to define the meaning of "issue" in article four; and (3) relying on the "stranger to the adoption" doctrine to presume that the settlor meant to exclude an adopted grandchild from the meaning of "issue" in article four. We find no error.

## I

The plaintiff's first claim is that the trial court misconstrued the intent of the settlor by holding that an adopted grandchild was not within the meaning of "issue" in article four. We disagree.

In construing the word "issue," we have often noted that, in its primary meaning, "issue" connotes lineal relationship by blood. *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 378, 254 A.2d 453 (1969); *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224 (1953); *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 472, 17 A.2d 517 (1941). Significantly, the common law presumed that an adopted child is not within the intended bounty of a settlor who, as a nonadopting parent, is a stranger to the adoption. *Mooney* v. *Tolles,* 111 Conn. 1, 9, 149 A. 515 (1930); *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 67–68, 112 A. 689 (1921).

These common law presumptions do not invariably govern interpretation of the terms of a will. Because the touchstone of trust interpretation is the intent of the settlor, the presumptions in favor of ancestral blood give way when an intent to include adoptees "definitely

appears from a reading of the instrument in light of the circumstances surrounding the settlor at the time of execution." *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 206, 292 A.2d 899 (1972); see also *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 279, 170 A.2d 130 (1961). We have held on several occasions that language ordinarily indicating a preference for ancestral blood can be shown to include adoptees. *Parker* v. *Mullen,* 158 Conn. 1, 4–5, 255 A.2d 851 (1969); *Mooney* v. *Tolles,* supra, 10–11; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 753–54, 136 A. 588 (1927).

The plaintiff argues that an intent to include adoptees can be discerned in this case in article six of the trust agreement. That article provides for the distribution of the trust assets to the "next-of-kin" or statutory heirs of the settlor in the event that both daughters die without issue. Since adoptees were entitled to take as statutory heirs at the time of the execution of the trust instrument; *Close* v. *Benham,* 97 Conn. 102, 105–106, 115 A. 626 (1921); the plaintiff reasons that the settlor implicitly intended to modify the meaning of "issue" in article four by referring to a broader category of statutory heirs in article six. We are not persuaded. Article six, by its own terms, becomes operative only if both of the settlor's daughters die without issue. The primary intent of the settlor, clearly evident in articles three, four and six, was to benefit his wife, two daughters and any surviving "issue" of his daughters. The trust did not provide that upon the death of Eloise the trust assets held for her were to go directly to her statutory heirs or "next-of-kin." Only upon the death of any and all surviving descendants of the settlor's body were the assets to be statutorily distributed. The trust itself draws a valid distinction between "issue" in article four and "next-of-kin" in article six. To overlook this clear distinction would do violence to the intention expressed in the trust instrument.

## II

The plaintiff next makes a two part claim that the meaning of "then living issue" in article four is to be determined with reference to the law in effect at the time of distribution upon Eloise's death in 1979. The plaintiff first argues that the trust instrument, by its use of the phrase "then living," postponed the vesting of the trust until the death of the life tenant. Building upon this predicate, the plaintiff then asserts that the governing law in 1979 must determine the definition of "issue." These arguments do not establish that the trial court's judgment was in error.

As a general rule, a remainder to be distributed to a class of beneficiaries at the termination of a life estate vests upon the creation of the trust or as soon thereafter as a remainderman comes into existence. *Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 352, 358, 225 A.2d 811 (1966). This preference in favor of early vesting is only a rule of construction, however, and must give way to a contrary intent disclosed in the trust instrument. Id., 358–59.

Under the circumstances presented by this case, nevertheless, we need not decide whether the trust instrument discloses an intent for late vesting. Similarly, we need not decide whether the law effective upon the termination of a life estate in a late vesting case would dictate the meaning of a particular word drafted sixty years before. These questions are of hypothetical interest only because, even if they were both resolved in favor of the plaintiff, she could not prevail.

In 1979, when the life tenant in this case died, the controlling statute regarding the meaning of "issue"; General Statutes § 45-64a (4); had reversed the common law presumption excluding adopted children from

use of such words as "child," "children" or "issue" in a will or trust instrument.[5] In enacting § 45-64a, the legislature had, however, expressly limited the statute's operation to "any will or trust instrument executed subsequent to October 1, 1959 . . . ." Because the trust instrument in this case, executed in 1919, clearly falls outside the scope of General Statutes § 45-64a (4), the common law presumption as to the meaning of "issue" controls. *Connecticut Bank & Trust Co.* v. *Bovey,* supra, 208; *Parker* v. *Mullen,* supra, 5 n.1.

### III

The plaintiff finally urges us to repudiate the "stranger to the adoption" doctrine under which a testator or settlor other than the adopting parent is presumed not to intend to share his bounty with adopted children. The plaintiff acknowledges, as she must, that General Statutes § 45-64a, which statutorily extinguished the "stranger to the adoption" doctrine, does not apply retroactively. *Connecticut Bank & Trust Co.* v. *Bovey,* supra, 209. In *Bovey,* we stated that the legislature, in setting a fixed prospective date for abandoning the common law presumption of intent, recognized a "need for orderly transition" that outweighs the benefits to be derived from an immediate across-the-board implementation of parity between adoptive and blood relationships.[6] Id. The argument against retroactivity is particularly persuasive because the draftsmen of trusts and wills prior to the enactment of § 45-64a may rea-

---

[5] General Statutes (Rev. to 1979) § 45-64a (4) provides: "The words 'child,' 'children,' 'issue,' 'descendant,' 'descendants,' 'heir,' 'heirs,' 'lawful heirs,' 'grandchild' and 'grandchildren,' when used in the singular or plural in any will or trust instrument executed subsequent to October 1, 1959, shall, unless such document clearly indicates a contrary intention, include legally adopted persons. Nothing herein shall be construed to alter or modify the provisions of section 45-162."

[6] The Maryland legislature, by contrast, has expressly provided for retroactive application of its new rule of construction in favor of adoptees. See Md. Fam. Law Code Ann. § 5-308 (d) (3) (1984).

sonably have relied upon the continuing validity of the contrary common law doctrine. Id.

The cases that the plaintiff cites as authority for a different rule are all distinguishable. In none of them was a court asked, as we are here, to override a specific legislative determination that its abolition of the common law presumption excluding adopted children be given only prospective effect. *McCaleb* v. *Brown,* 344 So. 2d 485, 488 (Ala. 1977) (applying a new rule of construction retroactively where "the only legislative expression in this general area . . . is not dispositive of the issue here presented"); *Estate of Moulton,* 63 Cal. App. 3d 1, 7–8, 133 Cal. Rptr. 500 (1976) (holding that the phrase "lawful issue" in a 1923 will included both adopted and natural children under then-controlling succession law, thereby eliminating the need to decide the question of retroactivity); *In re Will of Martell,* 457 So. 2d 1064, 1068 n.1 (Fla. App. 1984) (retroactively applying an adoption statute that, by its own language, reached "instruments, whether executed before or after entry of the adoption judgment, that do not expressly exclude an adopted person from their operation or effect"); *Elliott* v. *Hiddleson,* 303 N.W.2d 140, 144 (Iowa 1981) (retroactively rejecting "stranger to the adoption" doctrine in a context where the legislature had not spoken); *In re Coe,* 42 N.J. 485, 494–95, 201 A.2d 571 (1964) (declining to decide whether a statute, by its terms applicable only prospectively and silent on the question of retroactivity, should be applied to a preexisting will); *Sola* v. *Clostermann,* 67 Or. App. 468, 679 P.2d 317, 320 (1984) (retroactively applying a statute concerning illegitimate children that, by its own terms, was to be applied liberally to achieve its remedial purpose); *In re Estate of Tafel,* 449 Pa. 442, 453–54, 296 A.2d 797 (1972) (holding that its reversal of the common law presumption "does not conflict with any . . . legislation" relating to succession).

In the absence of compelling argument or authority to the contrary, we continue to adhere to the rule in *Connecticut Bank & Trust Co.* v. *Bovey,* supra, that the interpretation of irrevocable trusts executed prior to October 1, 1959, is governed by the legislative decision against retroactivity contained in § 45-64a. Even if we were to agree with the plaintiff that the "stranger to the adoption" doctrine is outmoded, as most commentators now maintain; R. Effland, "Will Construction Under The Uniform Probate Code," 63 Or. L. Rev. 337, 372 (1984); E. Halbach, "Issues About Issue: Some Recurrent Class Gift Problems," 48 Mo. L. Rev. 333, 337 (1983); E. Halbach, "The Rights of Adopted Children Under Class Gifts," 50 Iowa L. Rev. 971, 978 (1965); we would remain bound by the legislative policy dictating an orderly transition to a more hospitable view of adoption.

There is no error.

In this opinion the other justices concurred.