CONNECTICUT NATIONAL BANK AND TRUST COMPANY
*v*. DONALD W. CHADWICK ET AL.
(14035)
(14036)

CALLAHAN, GLASS, HULL, BORDEN and F. X. HENNESSY, Js.

Argued November 2, 1990—decision released January 22, 1991

*Ralph G. Elliot,* with whom, on the brief, was *William F. L. Rodgers,* for the appellants in the first appeal, appellees in the second appeal (defendant Heather Webb Fickes Foote et al.).

*Wesley W. Horton,* with whom was *Kimberly A. Knox,* for the appellants in the second appeal, appellees in the first appeal (named defendant et al.).

*Thomas J. Groark, Jr.,* with whom were *Hyacinth Douglas-Bailey* and, on the brief, *Michael W. Elsass* and *Ruth A. Kurien,* for the appellees in both appeals (defendant Donald G. Fickes et al.).

HULL, J. The dispositive issue in these consolidated appeals is whether the adopted grandchildren of Edwin

Stanton Fickes, the testator, are included within the term "grandchildren" as used in the testator's will and, therefore, beneficiaries of a trust created by the will. The trial court found that Donald G. Fickes and Jackson W. Fickes (adopted grandsons), twin boys adopted by the testator's son, Charles Fickes, before the testator's death, were entitled to share in the trust assets along with the the testator's four natural grandchildren, but that Barbara Ann Fickes Lyttle and Heather Webb Fickes Foote (adopted granddaughters), adopted by Charles long after the testator's death, were not so entitled. We conclude that all of the adopted grandchildren are included within the meaning of the word "grandchildren" as used in the testator's will. Accordingly, we affirm that portion of the judgment of the trial court including the adopted grandsons in the trust distribution and reverse that portion of the judgment excluding the later adopted granddaughters.

The factual and procedural background of the cases as found by the trial court and asserted by the parties is not in dispute. Edwin Stanton Fickes, the testator, died a resident of Washington on December 19, 1943. He left a will dated November 19, 1940, that provided for the creation of a separate trust upon his death. The will further provided that upon the death of the testator's last surviving child, one half of the trust property was to be distributed to Rensselaer Polytechnic Institute and the other half of the trust property distributed "in equal portions between [the testator's] grandchildren then living."

At the time of death of the testator's last surviving child, there were four biological grandchildren of the testator then living, Donald W. Chadwick and Marguerite Chadwick, children of the testator's daughter, Harriet Fickes Chadwick, and Mary Gord Beimfohr-Zimm and Martha Bennett Piccirilli, children of the

testator's son, George Jackson Fickes. In addition, there were four adopted grandchildren living. Donald George Fickes and Jackson Webb Fickes had been adopted by the testator's son, Charles Fickes, on June 22, 1942, prior to the testator's death. Barbara Ann Fickes Lyttle and Heather Webb Fickes Foote had been adopted by Charles on June 23, 1962, and June 25, 1965, respectively, subsequent to the testator's death.

The plaintiff, Connecticut National Bank and Trust Company, as trustee, brought a declaratory judgment action in the Superior Court seeking a determination of whether the testator's adopted grandchildren were entitled to share in the trust distribution. On December 6, 1989, the trial court found that the testator had intended to include his adopted grandsons as "grandchildren" within the meaning of his will and, therefore, that they were entitled to share in the trust distribution. On the other hand, the court concluded that because the testator could not have intended to include his adopted granddaughters as "grandchildren," they were not entitled so to share.

The adopted granddaughters appealed the judgment to the Appellate Court. The natural grandchildren also appealed the judgment insofar as it found that the adopted grandsons were entitled to share in the trust distribution.[1] We subsequently transferred the appeals to this court pursuant to Practice Book § 4023.

Based upon the various claims of the three parties in these appeals, the issues for our resolution are whether: (1) the adopted grandchildren of the testator are within the meaning of the term "grandchildren" as used by the testator in his will and thus entitled to

[1] The adopted granddaughters are appellants in the first appeal and appellees in the second appeal. The natural grandchildren are appellees in the first appeal and appellants in the second appeal. The adopted grandsons are appellees in both appeals.

share in the trust distribution; (2) the trial court improperly admitted postexecution evidence in order to determine the testator's intent at the time he executed his will; and (3) the trial court improperly admitted two letters under the business records exception to the hearsay rule.

I

"Significantly, the common law presumed that an adopted child is not within the intended bounty of a settlor who, as a nonadopting parent, is a stranger to the adoption. *Mooney* v. *Tolles,* 111 Conn. 1, 9, 149 A. 515 (1930); *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 67–68, 112 A. 689 (1921)." *Schapira* v. *Connecticut Bank & Trust Co.,* 204 Conn. 450, 455, 528 A.2d 367 (1987). In 1959, the legislature enacted Public Act No. 106,[2] the predecessor to General Statutes § 45-64a,[3] which reversed this common law presumption; it expressly restricted the application of the act, however, to any will or trust instrument executed after October 1, 1959. Since the will of the testator was executed on November 19, 1940, the common law presumption

---

[2] Number 106 of the 1959 Public Acts provided in pertinent part: "The words 'child', 'children', 'issue', 'descendant', 'descendants', 'heir', 'heirs', 'lawful heirs', 'grandchild', 'grandchildren', when used in the singular or plural in any will or trust instrument, shall, unless such document clearly indicates a contrary intention, include legally adopted persons. . . . The provisions of this act shall apply to wills and trust instruments executed subsequent to the effective date hereof."

[3] General Statutes § 45-64a provides in pertinent part: "(4) . . . . The words 'child,' 'children,' 'issue,' 'descendant,' 'descendants,' 'heir,' 'heirs,' 'lawful heirs,' 'grandchild' and 'grandchildren' when used in any will or trust instrument shall include legally adopted persons unless such document clearly indicates a contrary intention. . . .

"(10) The provisions of law in force prior to October 1, 1959, affected by the provisions of this section shall apply to the estates or wills of persons dying prior to said date and to inter vivos instruments executed prior to said date and which on said date were not subject to the grantor's power to revoke or amend."

applies in this case. *Connecticut Bank & Trust Co.* v. *Coffin,* 212 Conn. 678, 686–87, 563 A.2d 1323 (1989).

"[C]ommon law presumptions do not invariably govern interpretation of the terms of a will. Because the touchstone of trust interpretation is the intent of the settlor, the presumptions in favor of ancestral blood give way when an intent to include adoptees 'definitely appears from a reading of the instrument in light of the circumstances surrounding the settlor at the time of execution.' *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 206, 292 A.2d 899 (1972); see also *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 279, 170 A.2d 130 (1961)." *Schapira* v. *Connecticut Bank & Trust Co.,* supra, 455–56. Furthermore, "[s]uch presumptions, except as they may tend to produce some measure of certainty as to the meaning which will be judicially given to the words used by the testator in his will, merely state considerations which experience has shown are apt to be in the minds of testators, to be given such weight in a particular case as its circumstances justify; they are merely aids to construction which cannot prevail over an intent fairly deducible from the terms of the will read in the light of the surrounding circumstances." *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 473–74, 17 A.2d 517 (1941). Therefore, although the common law presumption against including adoptees as beneficiaries of a will applies in this case, the intent of the testator is dispositive of whether his adopted grandchildren are "grandchildren" within the meaning of his will.

## A

Before examining the evidence of the testator's intent, we must first consider a question of burden of proof. The natural grandchildren claim that in assessing the evidence of intent the trial court applied an

insufficient standard of proof that requires that its judgment including the adopted grandsons as trust beneficiaries be reversed. They argue that: (1) because the judgment fails to indicate the standard of proof applied by the court, it must be assumed that the trial court applied the civil standard of a fair preponderance of the evidence, citing *In re Juvenile Appeal (83–AB)*, 189 Conn. 58, 59, 454 A.2d 271 (1983); and (2) in light of the principle that the language of a will is to be given its primary meaning unless a contrary intent clearly or definitely appears, the court should have applied an intermediate burden of proof such as "clear and convincing evidence," "clear and satisfactory evidence" or "clear and positive proof." See *J. Frederick Scholes Agency* v. *Mitchell*, 191 Conn. 353, 358, 464 A.2d 795 (1983); *Clark* v. *Drska*, 1 Conn. App. 481, 486–87, 473 A.2d 325 (1984). This claim is without merit.

" 'The construction of a will presents a question of law to be determined in the light of facts which are found by the trial court or are undisputed or indisputable.' *Spurr's Appeal*, 116 Conn. 108, 111, 163 A. 608 [1933]; see *Davis* v. *Margolis*, 107 Conn. 417, 420, 140 A. 823 [1928]." *Hershatter* v. *Colonial Trust Co.*, 136 Conn. 588, 596, 73 A.2d 97 (1950). "When the facts have been found or are undisputed, nothing remains but for the trial court to exercise its legal judgment and ' "to draw its inference from the facts . . . . [I]n such a case the conclusion of the court can always be reviewed by the appellate court. An erroneous conclusion is an error of law and not an error in an inference of fact." *Hayden* v. *Allyn*, 55 Conn. 280, 289, 11 Atl. 31 [1887].' *Davis* v. *Margolis*, [supra, 421]." *Carr* v. *Huber*, 18 Conn. App. 150, 154, 557 A.2d 548 (1989).

Since the issue of the testator's intent presents a question of law, our review of the trial court's judgment that the testator intended to include his adopted

grandsons as beneficiaries requires that we independently examine the record to determine whether the facts found by the trial court support this conclusion. See *Connecticut Bank & Trust Co.* v. *Bovey,* supra, 205–206 (conclusion reached by the trial court regarding the testator's intent must stand unless it was legally or logically inconsistent with the facts found). Therefore, we need not address the propriety of the standard of proof utilized by the trial court.

Moreover, although our cases on will construction use the word "clear" or "clearly" in relation to a finding of a testator's intent contrary to the ordinary meaning of the words used in the testator's will; *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 378, 254 A.2d 453 (1969) (the word " 'issue' . . . will be so construed [as connoting lineal relationship by blood] unless it clearly appears that [it was] used in a more extended sense"); *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224 (1953) (" 'issue' . . . will not be construed to include adopted children unless the circumstances clearly indicate that the testator so intended"); *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 752, 136 A. 588 (1927) ("heirs at law are not to be disinherited unless the intent to do so is clear and strong"); the natural grandchildren have brought forth no authority in this state or any other that an intermediate burden of proof is required in a case such as this.

In *J. Frederick Scholes Agency* v. *Mitchell,* supra, 358, we stated that " '*fraud* must be proven by a standard more exacting than "a fair preponderance of the evidence." ' " (Emphasis added.) In *Clark* v. *Drska,* supra, 484 n.8, both parties agreed that the standard of proof was "clear and positive" proof because "the quantum of proof to establish *adverse possession* is well-settled in this state." (Emphasis added.) The natural grandchildren have advanced no argument as to why the bur-

den of proof in fraud or adverse possession cases, both long the rule in this state, should be engrafted onto a will construction case, merely because of the frequent reference to clear intent to achieve a distribution in a will contrary to the ordinary meaning of the terms used. Furthermore, in view of our broad adoption statute, the result we reach in this case is not necessarily contrary to the ordinary meaning of the term "grandchildren." See footnote 3, supra. To claim that it is begs the question.

B

It is also necessary to address the evidentiary claims before considering the evidence regarding the testator's intent. The natural grandchildren claim that the trial court should not have admitted into evidence a letter dated December 8, 1942, written by the testator to C. F. Mackenzie and a letter dated December 3, 1942, written to his son Charles. We do not agree.

The natural grandchildren did not object to the admission of the letter to C. F. Mackenzie at trial. In fact, following the offer of the two letters into evidence by the adopted grandchildren, the natural grandchildren stated that "there is no problem with [the Mackenzie letter] . . . ." "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 4185; *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 140, 520 A.2d 173 (1987). We therefore decline to review the claim challenging the admissibility of the letter to C. F. Mackenzie.

The natural grandchildren objected to the admission of the testator's letter to Charles, but the trial court admitted the letter under the business records exception to the hearsay rule. We need not address, however, whether the letter to Charles was a business

record admissible pursuant to General Statutes § 52-180. In *Connecticut Bank & Trust Co.* v. *Coffin,* supra, 694, we stated in a substantially similar context: " 'Testimony of declarations of a decedent introduced to show his state of mind is not excluded by the hearsay rule.' *Kukanskis* v. *Jasut,* 169 Conn. 29, 36, 362 A.2d 898 (1975); *Babcock* v. *Johnson,* 127 Conn. 643, 644, 19 A.2d 416 (1941)." The adopted grandchildren assert that the letter to Charles was introduced to show the testator's state of mind, specifically his attitude toward his adopted grandsons and to show his intent with regard to his will. Thus, the letter was not hearsay.

Moreover, the letter was also admissible under General Statutes § 52-172 which provides in part that "[i]n actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence." *Walter* v. *Sperry,* 86 Conn. 474, 477-78, 85 A. 739 (1913). As previously stated, the letter was relevant to the matter in issue, namely, the testator's intent. "[T]he fact that the ground upon which the trial court admitted this [evidence] was improper does not make its admission erroneous. *Witek* v. *Southbury,* 132 Conn. 104, 110, 42 A.2d 843 (1945); 5 C.J.S., Appeal and Error § 1464 (3)." *State* v. *Ouellette,* 190 Conn. 84, 93, 459 A.2d 1005 (1983). We conclude, therefore, that the trial court did not abuse its discretion in admitting the two letters into evidence.

The natural grandchildren next claim that the trial court should not have considered any evidence regarding events that occurred subsequent to the execution of the testator's will in 1940, such as the letters, in order to determine his intent in using the term "grandchildren" at the time of execution. We do not agree.

The trial court ruled that in order to determine whether the testator intended to include his adopted

grandchildren under the terms of his will, it was necessary to examine events occurring after the execution of the testator's will. Such circumstances, the court held, are properly scrutinized where, as in this case, the information is necessary to resolve a latent ambiguity arising from the execution of a will or trust instrument. The court relied principally on *Mooney* v. *Tolles,* supra, 11, which it found "substantially similar" to the instant case.

To establish their claim that postexecution evidence is inadmissible, the natural grandchildren must of necessity dispose of *Mooney,* which stands four square in their way. The facts of that case are as follows. Jessie Shuttleworth, the testatrix, died on December 12, 1928, leaving a will dated November 16, 1926. She left surviving her husband, Herbert W. Shuttleworth, and two sons by a former marriage, King Tolles and Sheldon H. Tolles. At the time of her death, her son Sheldon had one natural child and an adopted child, Laurel Tolles. Laurel had come to live with Sheldon on April 11, 1927, and was adopted by him and his wife on January 31, 1928. Id., 2–3.

The questions reserved to this court involved the issue of whether Laurel was included within the meaning of the terms "lawful child" and "lawful issue" of Sheldon, as used in the testatrix's will. Id., 3–5. We concluded that "adoption prior to the execution of the will or a considerable time before the death of the testator, coupled with knowledge, on his part, of such adoption and approval thereof, are considerations persuasive of an intent to include the adoptee as a child of the adopting parent." Id., 10–11, citing *Ansonia National Bank* v. *Kunkel,* supra, 752–53.

The natural grandchildren claim that the proposition in *Mooney* that events occurring after the execution of a will can be considered in determining a testator's

intent is erroneous and " 'is no longer good law.' " Their principal argument in support of this claim is that the proposition in *Mooney* v. *Tolles,* supra, is not supported by the referenced pages in *Ansonia National Bank* v. *Kunkel,* supra.

In *Kunkel,* the testator executed his will in 1923, and died in 1924. The will provided that one third of the income of a trust was to be paid to his sister, Nora Ford, and that upon her death, her portion of the income was to be paid to her "issue." Nora Ford had adopted Gladys Ford in 1899. On the basis of a close relationship between the testator and Gladys and the fact that Gladys was always considered a member of the family, we concluded that she was "issue" of the testator's sister within the meaning of the testator's will. Id., 747–48.

Since the adoptee in *Kunkel* was adopted twenty-four years before the execution of the testator's will, it is undoubtedly true that the case is not unequivocal authority for the proposition in *Mooney* that knowledge of an adoption occurring after the execution of a will coupled with approval, is indicative of an intent to include the adoptee within the meaning of terms such as "issue" or "child" in a testator's will. Regardless of the claimed tenuous citation of authority, we conclude that rumors of *Mooney's* death have been greatly exaggerated. The natural grandchildren claim that although *Mooney* has been cited many times, its actual holding has never been reaffirmed. This claim is tilting at windmills. There is no requirement that a strong statement of law be specifically reaffirmed to maintain its viability. We have carefully examined every one of the twelve cases in which *Mooney* has been cited by this court and in none of them is there the slightest hint that the decision is questioned or weakened in its con-

tinuing viability. See *Connecticut Bank & Trust Co.* v. *Coffin,* supra, 687; *Schapira* v. *Connecticut Bank & Trust Co.,* supra, 455; *Connecticut Bank & Trust Co.* v. *Bovey,* supra, 207; *Connecticut Bank & Trust Co.* v. *Hills,* supra, 380; *Hartford National Bank & Trust Co.* v. *Von Ziegesar,* 154 Conn. 352, 357, 225 A.2d 811 (1966); *Smith* v. *Foord,* 143 Conn. 550, 557, 124 A.2d 224 (1956); *Morgan* v. *Keefe,* 135 Conn. 254, 257, 63 A.2d 148 (1948); *Trowbridge* v. *Trowbridge,* supra, 473; *Dolbeare* v. *Dolbeare,* 124 Conn. 286, 289, 199 A. 555 (1938); *West Haven Bank & Trust Co.* v. *McCoy,* 117 Conn. 489, 491, 169 A. 49 (1933); *Mead* v. *Close,* 115 Conn. 443, 446, 161 A. 799 (1932); *Wildman's Appeal,* 111 Conn. 683, 689, 151 A. 265 (1930). This circumstance is not controlling but is highly persuasive of *Mooney's* continuing authority.

Finally, we impliedly accepted the presence of *Mooney* among us when we stated in *Connecticut Bank & Trust Co.* v. *Coffin,* supra, 687, that "[i]n cases where we have concluded the presumption has been overcome that a testator or settlor, other than an adopting parent, did not intend to benefit adopted children because he was a 'stranger to the adoption,' there has been substantial evidence in the circumstances underlying the creation of the trust or devise indicating a probable intention to include adopted children in the designated class of 'issue' or 'children.' *Parker* v. *Mullen,* [158 Conn. 1, 4–5, 255 A.2d 851 (1969)] (testimony that testator's attorney had advised him that use of the word 'children' rather than 'issue' would allow an adopted child, for whom the testator had expressed a desire to provide, to benefit from a designation of 'children' as remaindermen); *Mooney* v. *Tolles,* [supra, 10–11] (evidence that testator knew and approved of the adoption and had the opportunity to change her will to exclude her son's adopted child from testamentary

trusts created for benefit of 'children' of son as remaindermen); *Ansonia National Bank* v. *Kunkel,* supra, 753–54 (evidence that testator knew his sister's adopted child, that he was her godfather and had a close relationship with her, that he realized his bequest to the 'issue' of his sister could refer only to her adopted child, and that he had used the terms 'issue' and 'children' interchangeably in his will)."

We conclude, therefore, that it was not improper for the trial court to consider evidence of events occurring subsequent to the execution of the testator's will in order to determine the testator's intent.

## II

We now turn to the principal issue of the testator's intent. The trial court concluded that "there [was] substantial evidence that the testator approved of the adoption of the [grandsons] and intended for them to take under the provisions of his will" but that "[i]t [was] clear that the testator, not having known of the latter two adoptions, could not have intended to benefit [the adopted granddaughters] by providing for them in his will." Despite strenuous attempts by the natural grandchildren to convince us that it is no longer "good law," we consider *Mooney* v. *Tolles,* supra, persuasive, and conclude that the trial court reasonably determined that there was substantial evidence that the testator intended to include the adopted grandsons within the meaning of the term "grandchildren," and, therefore, that they are trust beneficiaries under the terms of his will.

"Whether the testat[or] intended to include in the gift to [grand]children an adopted [grand]child depends upon the intention on the part of the testat[or], ascertained from the reading of the will, in the light of all the surrounding circumstances. *Middletown Trust Co.* v.

*Gaffey,* 96 Conn. 61, 67, 112 A.2d 689 (1921); note, 27 L.R.A. (N.S.) 1158. In the determination as to this intention several considerations are to be resorted to. One of these is the adoption statute in effect in the State at the time, it being presumed that the testat[or] knew and acted in contemplation of the reciprocal rights and duties resulting from the existing statute. 'Where the statutes are broad and comprehensive in their terms, the testator is generally held to have intended to include a child of adoption within the term "child or children" . . . .' " *Mooney* v. *Tolles,* supra, 7–8. Thus, "the existence of the statute 'is one of the facts to be considered among the circumstances and environment surrounding [the testator].' " Id., 8.

General Statutes (1930 Rev.) § 4810, our adoption statute in effect in 1940, belonged to this broad class. Section 4810 provided in pertinent part that "such [adopted] child shall thereupon become the legal child of the person by whom he shall be so adopted, and such person shall become his legal parent, with all the rights and duties between them of a legitimate parent and child. Such child by virtue of such adoption shall inherit estate from his adopting parents or their relatives as though he were the natural child of such adopting parents . . . ." In view of this type of adoption statute, words such as "children" and "grandchildren" are more likely used to include adopted children than words which distinctly and emphatically connote lineal blood relationship, such as "issue" or "descendants." *Parker* v. *Mullen,* supra, 7; *Connecticut Bank & Trust Co.* v. *Hills,* supra, 382.

"Two further rules of testamentary construction are relevant. 'One of these is that heirs at law are not to be disinherited unless the intent to do so is clear and strong. . . . Again, as an aid to construction where the meaning is in doubt, that construction will be

adopted which most nearly conforms to the statute of distributions.' *Ansonia National Bank* v. *Kunkel,* [supra, 752–53] . . . . Another consideration is that the presumption that an adopted child was within the intended bounty of his adopting parent does not prevail where the testator is a stranger to the adoption. *Middletown Trust Co.* v. *Gaffey,* supra, p. 71. It is significant, however, that in practically all of the cases where this distinction has been given effect, it appears, as it did in the *Gaffey* case, that the adoption took place long after the testator's death, and often under circumstances savoring of an attempt to create an heir for the purpose of defeating a gift over conditioned on the nonexistence of children at the termination of the first limited estate." *Mooney* v. *Tolles,* supra, 9–10.

According to § 4810, in 1943 the adopted grandsons were the testator's heirs at law and thus not to be disinherited from the testator's bounty unless the intent to do so was clear and strong. *Ansonia National Bank* v. *Kunkel,* supra, 752. Furthermore, although the testator was a stranger to the adoption, the adoption of the grandsons took place before the testator's death, rendering the instant case distinct from those cases where the presumption of inheritance has not prevailed. *Mooney* v. *Tolles,* supra.

Finally, and most significantly for the instant case, "the fact that [an] adoption occurred subsequent to the death of the testator [is] 'a circumstance of controlling importance.' " Id., 10. If a testator did not know of an adoption, it is inconceivable to conclude that he intended to include one who might by adoption, years after his death, become the child of his child. Id. "Conversely, adoption prior to the execution of the will or a considerable time before the death of the testator, coupled with knowledge, on his part, of such adoption and approval thereof, are considerations persuasive of

an intent to include the adoptee as a child of the adopting parent. *Ansonia National Bank* v. *Kunkel,* supra." Id., 10–11. If a testator desired to deprive an adoptee in his bequests to "grandchildren," he is considered to have had ample time and opportunity, between the adoption and death, to effect such discrimination by adequate provisions through a change in his will. Id., 11. "[F]ailure to do so is not without significance. *Hartford-Connecticut Trust Co.* v. *Lawrence,* 106 Conn. 178, 187, 138 Atl. 159 [1927]; *Bill* v. *Payne,* 62 Conn. 140, 142, 25 Atl. 354 [1892]." Id.

The testator, of course, was acquainted with the twin boys. The trial court found that he showed a sincere affection and concern for them. In correspondence to his friend Dr. Jones, dated November 23, 1943, he wrote: "We had a good quiet summer on Charlie's farm in Nova Scotia. He has adopted twin boys, now almost two years old, good, healthy [and] sturdy lads, and he and his wife are devoted to them." He also showed an interest in the financial welfare of the boys. He advised his son to establish a trust fund for the adopted twins and stated that "the income from this trust fund, to which your mother and I may be able to make some further contributions, would provide for their education." The testator attended their christening even though he was not a regular churchgoer. He also regularly spoke with the twins' mother about their health and welfare and was known to have inquired specifically about their eating habits and medications.

The testator also had ample time to change his will in order to rule out his adopted grandsons as "grandchildren," if he so desired, which he did not do. This fact provided further evidence that he approved of the adoptions and wanted the boys to share in his estate. *Parker* v. *Mullen,* supra, 6; *Mooney* v. *Tolles,* supra, 11.

In view of all of the above, the trial court found that there was "substantial evidence" that the testator approved of the adoption of the twin grandsons and intended for them to take under the provisions of his will. The court then concluded that the twin grandsons should take an appropriate share of the trust proceeds designated for the testator's "grandchildren." We agree.

Because the fact that the adoption occurred after the death of the testator is a factor to be given great weight, the court took a different tack with respect to the adopted granddaughters. *Morgan* v. *Keefe,* supra, 257; *Middletown Trust Co.* v. *Gaffey,* supra, 70. The court concluded that the testator, not having known of the later adoptions, could not have intended for the adopted granddaughters to take under his will and, therefore, ruled them out as trust beneficiaries.

The fact that the adopted granddaughters were adopted nineteen and twenty-two years respectively after the testator's death would, standing alone, militate strongly against their being found to be "grandchildren" within the meaning of the testator's will. In other cases we have upheld the trial court's finding excluding persons adopted after the testator's death as beneficiaries of a testator's will; see *Connecticut Bank & Trust Co.* v. *Coffin,* supra, 689–90; *Schapira* v. *Connecticut Bank & Trust Co.,* supra, 455; *Connecticut Bank & Trust Co.* v. *Bovey,* supra, 209; *Morgan* v. *Keefe,* supra, 258; *Wildman's Appeal,* supra, 689; because in considering the rights of an adoptee to take under a will, the fact that the adoption occurred after the death of the testator is a factor to be given great weight. *Morgan* v. *Keefe,* supra, 257. These cases, however, do not control this case.

Although Holmes' aphorism that the life of the law is not logic but experience has been oft-quoted, we have

not on this court by any means abandoned logic in our reasoning. This court has recognized that "[p]erhaps there is no class of cases where precedents have so little weight as in the construction of wills." *Lyon* v. *Acker,* 33 Conn. 222, 225 (1866). The position of the adopted granddaughters is a good example of this, for this case is unique among previous cases in that there are here two adopted grandsons of whom the testator had knowledge and approved, and two granddaughters adopted much later of whom the testator obviously had not an inkling. Under this unusual scenario the trial court, in construing the testator's will, incorrectly applied the customary adopted after death presumption without considering the unbreakable logical link between the two groups of adoptees. In construing the term "grandchildren" as it applied to the testator's twin grandsons, the court properly interpreted his intent, at the time of execution of his will, as including the adopted grandsons whom he later knew and approved before his death.[4] On the basis of this conclusion, we conclude that the testator's use of the term "grandchildren" also included his two adopted granddaughters—also the children of Charles.

So far as this record shows, Charles had no natural children. It is likely, therefore, that the testator recognized that any of his grandchildren through Charles would be adopted, rather than biological. Thus, when he drew his will and intended "grandchilden" to include adopted grandchildren, he must be regarded as intending to include not only those adopted prior to his death, but also those adopted thereafter, because the taking

---

[4] In response to the adopted granddaughters' claim for inclusion as trust beneficiaries, the natural grandchildren claim that this action is not one in which a will may speak from the time of death of the testator in accordance with the rule first enunciated in *Gold* v. *Judson,* 21 Conn. 616, 623 (1852). In view of the conclusion we reach regarding the testator's intent prior to his death, we do not reach this issue.

class was designated as "grandchildren . . . living" at the death of his last remaining child. Under these circumstances, it is unlikely that the testator intended to include the children of Charles adopted before his death but to exclude those adopted after his death. He must have intended to include both.

With respect to the first appeal, the judgment is reversed and the case is remanded with direction to render judgment including Barbara Ann Fickes Lyttle and Heather Webb Fickes Foote within the class of grandchildren of Edwin Stanton Fickes entitled to take under the terms of his will.

With respect to the second appeal, the judgment is affirmed.

In this opinion CALLAHAN, GLASS and BORDEN, Js., concurred.

F.X. HENNESSY, J., dissenting. I respectfully dissent from the majority's conclusion that Barbara Ann Fickes Lyttle and Heather Webb Fickes Foote, adopted by Charles Fickes long after the death of his father, the testator, should take as beneficiaries under the terms of the testamentary trust.

Two children, Donald G. Fickes and Jackson W. Fickes, were adopted by the testator's son after the will and testamentary trust were executed but before the testator died. The trial court recognized the "stranger to the adoption rule" under which a testator or a settlor, other than the adopting parent, is presumed not to intend to share his bounty with adopted persons; *Schapira* v. *Connecticut Bank & Trust Co.,* 204 Conn. 450, 458, 528 A.2d 367 (1987); *Mooney* v. *Tolles,* 111 Conn. 1, 9, 149 A. 515 (1930); *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 67, 112 A. 689 (1921); and accordingly concluded that, under the common law,

which was applicable at the time, these adopted children were presumably not "grandchildren" of the testator as that term was used in the will, because they were not blood descendants. Nevertheless, the court also recognized that adoption a considerable time before the death of the testator coupled with knowledge, on his part, of such an adoption and approval thereof are considerations persuasive of an intent to include an adoptee as a child of the adopting parent. *Mooney* v. *Tolles,* supra, 10–11.

The majority has found the *Mooney* case to be controlling and agrees with the trial court that there was substantial evidence that the testator intended to include the adopted grandsons within the meaning of the term "grandchildren" and, therefore, that they are trust beneficiaries under the terms of the will. Furthermore, the majority recognizes that "[t]he fact that the adopted granddaughters were adopted nineteen and twenty-two years respectively after the testator's death would, standing alone, militate strongly against their being found to be 'grandchildren' within the meaning of the testator's will." See *Connecticut Bank & Trust Co.* v. *Coffin,* 212 Conn. 678, 689–90, 563 A.2d 1323 (1989); *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 209, 292 A.2d 899 (1972); *Morgan* v. *Keefe,* 135 Conn. 254, 257, 63 A.2d 148 (1948); *Wildman's Appeal,* 111 Conn. 683, 689, 151 A. 265 (1930). They then dismiss this reasoning, however, by stating that " '[p]erhaps there is no class of cases where precedents have so little weight as in the construction of wills.' *Lyon* v. *Acker,* 33 Conn. 222, 225 (1866)." The rationale used to include the grandchildren adopted after the testator's death is that if the testator intended to include the adopted grandchildren that he knew and of whom he approved, logically, the term "grandchildren" as used in the will, represents a class including all grandchildren, natural or adopted, before or after the testator's death.

Even though there were no adopted grandchildren on the scene when the will was executed, the evidence that the testator came to know and approve of the adopted grandsons supports the trial court's conclusion that he infused an intent into the will to include those grandchildren. *Mooney* v. *Tolles,* supra, 10–11. There are no statements, no actions and no evidence, however, that the testator intended to include any adoptees other than the adopted grandsons in his will.

For the foregoing reasons, the judgment of the trial court should be affirmed in its entirety.