CONNECTICUT BANK AND TRUST COMPANY *v.*
DEXTER D. COFFIN IV ET AL.
(13390)
(13391)
(13392)
(13393)
(13394)
(13395)
(13396)
(13397)

CONNECTICUT BANK AND TRUST COMPANY ET AL.
*v.* DEXTER D. COFFIN, JR., ET AL.
(13398)
(13399)
(13400)

PETERS, C. J., SHEA, CALLAHAN, GLASS and MENT, Js.

Argued June 13—decision released August 22, 1989

*Joseph F. Skelley, Jr.*, with whom, on the briefs, were *Mary Margaret Pitt, C. Thomas Furniss, James F. Aspell, Thomas F. Parker* and *Brenda M. Bergeron,* for the defendants Dexter D. Coffin, Jr., Mary K. Coffin, Windsor D. Coffin, Dexter D. Coffin IV and Gavin T. Coffin.

*Joseph B. Burns,* with whom were *Austin J. McGuigan* and, on the briefs, *Bruce G. MacDermid,* for the defendants Thomas M. Fogerty Coffin, Tavis H. Fogerty Coffin, Ryan K. Fogerty Coffin and Sean Van Schoonmaker Coffin.

*Robert A. Horowitz,* with whom was *Mark S. Gregory,* for the defendants Neil Elliott, Bruce W. Elliott, Merrilee Elliott O'Neil, R. Brian Elliott, Glenaan Mary Elliott and Walter J. Elliott IV.

*John L. Bonee III,* with whom was *Jacob D. Zeldes, Frank J. Silvestri, Jr., David P. Atkins, David P. Friedman* and, on the briefs, *Elga R. Wasserman* and *Glenn E. Coe,* for the defendants Kathryn Blaire Greenhalgh, Joyce C. Coffin, Martha E. Coffin Thomas, Laura E. Coffin, Edward M. Coffin and Dexter D. Coffin III.

*Stephen B. Goddard,* with whom was *Cynthia A. Blair,* for the defendant Lance J. Coffin.

*George C. Hastings,* with whom, on the brief, was *Timothy S. Fisher,* for the plaintiff Connecticut Bank and Trust Company.

*Jacob D. Zeldes* and *Paul J. McQuillan,* with whom were *Frank J. Silvestri, Jr., David P. Atkins, David P. Friedman* and, on the briefs, *Glenn E. Coe, Elga R. Wasserman, John L. Bonee III, Joseph F. Skelley, Jr.,* and *Mary Margaret Pitt,* for the defendants Joyce C. Coffin, Dexter D. Coffin III, Edward M. Coffin, Martha E. Coffin Thomas, Laura E. Coffin, Kathryn Blaire Greenhalgh, Lance J. Coffin, Sean Van Schoonmaker Coffin, Gavin T. Coffin, Dexter D. Coffin IV, Sean J. Thomas, Jr., unknown and unborn issue of Dexter D. Coffin, Jr., Dexter D. Coffin, Jr., Mary K. Coffin and Windsor D. Coffin.

*George C. Hastings,* with whom, on the brief, were *Timothy S. Fisher* and *Linda J. McDowell* for the plaintiffs Connecticut Bank and Trust Company and James E. Morgan, Jr.

SHEA, J. In the first action the Connecticut Bank and Trust Company, N.A. (CBT), sought a declaratory judgment to determine which of the defendants are "issue" of Dexter D. Coffin, Jr., and thus beneficiaries of an inter vivos trust created by his father, Dexter D. Coffin,

by an indenture dated April 30, 1957,[1] of which the plaintiff bank is a cotrustee. The trial court held that the term "issue" should be construed to include all the blood descendants of Dexter D. Coffin, Jr., but not those persons adopted by him or his descendants.[2] Accordingly, blood descendants of Dexter D. Coffin, Jr., who have been adopted out of the Coffin family were declared to be beneficiaries unless expressly excluded by the trust instrument.

In the second action, which was consolidated for trial with the first, the plaintiff CBT and its cotrustee, James E. Morgan, Jr., sought approval of the trust account for the period April 30, 1957, to May 2, 1984. They also requested approval of an agreement modifying the terms of the trust and settling various claims relating thereto that are the subject of litigation in the federal district court for this state.[3] The trial court approved the account but rejected the settlement agreement because the trust modifications were deemed not to be in the best interests of minor and unascertained beneficiaries nor consistent with the intentions of the settlor.

Appeals have been taken from both judgments by various beneficiaries and claimed beneficiaries.

I

The first case presents the issues of whether the trial court erred: (1) in construing the term "issue" as used

[1] The complaint also sought a construction of the word "issue" as used in two testamentary trusts created by Dexter D. Coffin and his wife Elizabeth Dorr Coffin. The trial court limited its decision to a construction of "issue" as used in the 1957 inter vivos trust.

[2] Issues concerning the paternity of certain children of Dexter D. Coffin III, a son of Dexter D. Coffin, Jr., were also resolved by the judgment. No appeal has been taken from that part of the judgment.

[3] The federal court action was brought against the trustees by Joyce C. Coffin, the second wife of Dexter D. Coffin, Jr., who, in addition to him, was named as an income beneficiary of the 1957 trust. She sought removal of the trustees upon the ground that they had breached their fiduciary duties in distributing the trust income.

in the trust indenture to include only the blood descendants of Dexter D. Coffin, Jr., thus excluding those adopted by him or his descendants; (2) in construing a provision of the trust stating that the term issue "is not intended to include adopted persons and their issue" not to apply to Kathryn Blaire Greenhalgh, a child of Dexter D. Coffin III, after she had been adopted by her mother's second husband; and (3) in denying an allowance for attorney's fees incurred by claimed beneficiaries who had intervened in the proceedings.

Most of the facts relied upon by the trial court are contained in a written stipulation of the parties. By an instrument dated April 30, 1957, Dexter D. Coffin, who died in 1966, created a trust with CBT and James M. Carlisle as trustees for the benefit of "[his] son, Dexter D. Coffin, Jr. the grantor's daughter-in-law, Joyce C. Coffin or issue of the grantor's son Dexter D. Coffin, Jr." The trust contains spendthrift provisions authorizing the trustees to apply "so much of the net income or principal of the trust fund as [CBT] shall in its absolute and sole discretion determine to or to the use of such one or more of the [designated beneficiaries] as may from time to time be living, as the corporate trustee shall in its absolute and sole discretion from time to time select, without requirement upon the corporate trustee to maintain any equality in the amounts paid to or applied to the use of the person or persons so selected by it."[4] See General Statutes § 52-231. Upon termination of the trust, the principal and any undistributed income are to be delivered "in equal shares

---

[4] Paragraph First (a) of the 1957 trust provides: "During the term of this trust and so long as the grantor's son Dexter D. Coffin, Jr. or the grantor's daughter-in-law Joyce C. Coffin or issue of the grantor's son Dexter D. Coffin, Jr. shall be living, the trustees shall pay or apply so much of the net income or principal of the trust fund as said Connecticut Bank and Trust Company (hereinafter sometimes called 'the corporate trustee') shall in its absolute and sole discretion determine to or to the use of such one or more of the grantor's son Dexter D. Coffin, Jr., the grantor's daughter-

to the issue of the grantor's son Dexter D. Coffin, Jr. then living, per stirpes, or in default of such issue to the issue of the grantor's son David L. Coffin then living, per stirpes, or in default thereof" to the grantor's heirs in accordance with the intestacy laws of this state, "excluding, however, the grantor's grandson Robert L. Olmstead (formerly Robert Linwood Coffin) and any issue of said grandson."[5]

Another paragraph of the trust indenture provides as follows: "SECOND: Wherever in this trust indenture reference is made to the 'issue' of the grantor's son Dexter D. Coffin, Jr., the term 'issue' shall be deemed not to include the grantor's said grandson Robert L. Olmstead or any issue of said grandson, and no part of the net income or principal of the trust fund shall be paid to the grantor's said grandson Robert L. Olmstead or to any issue of said grandson. The term 'issue' as used in this trust indenture is not intended to include adopted persons and their issue."

## A

Those defendants who have been adopted into the Coffin family by Dexter D. Coffin, Jr., or by his genetic

---

in-law Joyce C. Coffin and the issue of the grantor's son Dexter D. Coffin, Jr., as may from time to time be living, as the corporate trustee shall in its absolute and sole discretion from time to time select, without requirement upon the corporate trustee to maintain any equality in the amounts paid to or applied to the use of the person or persons so selected by it."

[5] Paragraph First (d) of the 1957 trust provides: "Upon the termination of this trust the trustees, subject to the provisions hereinafter contained relating to retention of shares of minors by the trustees, shall convey and deliver all property then belonging to the trust, including the principal and any undistributed income thereof, absolutely in equal shares to the issue of the grantor's son Dexter D. Coffin, Jr. then living, per stirpes, or in default of such issue to the issue of the grantor's son David L. Coffin then living, per stirpes, or in default thereof, the trustees shall convey and deliver all said property to the persons who would be entitled to take the same in accordance with the laws of the State of Connecticut then in force, if the grantor had died upon the termination of this trust, intestate and a resident of the State of Connecticut and the absolute owner of said property, excluding, however, the grantor's grandson Robert L. Olmstead (formerly Robert Linwood Coffin) and any issue of said grandson."

descendants attack the conclusion of the trial court that the term "issue" as used in the trust instrument does not include any person adopted into the family. They advance four arguments: (1) since the term "adopted persons" is used in the sentence following the specific declaration that the term "issue" shall not include the settlor's grandson, Robert L. Olmstead, who had been adopted out of the Coffin family, the exclusion of "adopted persons" must refer to those who, like Robert, have been adopted out of and not into the family; (2) since the settlor has provided for a distribution of the corpus of the trust to his heirs at law upon termination of the trust and in default of surviving issue of his sons, he must have contemplated that in some circumstances adopted-in persons, who are entitled to inherit equally with natural children, may become beneficiaries of the trust; (3) the inclusion as a named beneficiary of Joyce K. Coffin, the wife of Dexter D. Coffin, Jr., at the time the trust was created, indicates that the settlor was not concerned exclusively with the welfare of his blood descendants; and (4) it is a well established rule of construction that "heirs at law are not to be disinherited unless the intent to do so is clear and strong." *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 752, 136 A. 588 (1927).

Before addressing these arguments, it is well to consider whether persons adopted into the Coffin family would have been included in the class of "issue" of Dexter D. Coffin, Jr., apart from the provision excluding "adopted persons" from that class. "In construing the word 'issue,' we have often noted that, in its primary meaning, 'issue' connotes lineal relationship by blood." *Schapira* v. *Connecticut Bank & Trust Co.,* 204 Conn. 450, 455, 528 A.2d 367 (1987). The word "will be so construed unless it clearly appears that [it was] used in a more extended sense." *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 378, 254 A.2d 453

(1969). " '[I]ssue' . . . will not be construed to include adopted children unless the circumstances clearly indicate that the testator so intended." *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224 (1953).

These rules of construction create certain presumptions of intent based upon "considerations which experience has shown are apt to be in the minds of [settlors], to be given such weight in a particular case as its circumstances justify; they are merely aids to construction which cannot prevail over an intent fairly deducible from the terms of the [trust] read in the light of the surrounding circumstances." *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 474, 17 A.2d 517 (1941). "We have held on several occasions that language ordinarily indicating a preference for ancestral blood can be shown to include adoptees." *Schapira* v. *Connecticut Bank & Trust Co.,* supra, 456.

In 1959, the legislature enacted the predecessor to General Statutes § 45-64a (4),[6] which reversed the common law presumption that adopted children are not included in the term "issue," but restricted the application of this statute to any will or trust instrument executed after October 1, 1959. 1959 Public Acts, No. 106. The statute provides that in documents executed after that date the word "issue," as well as other similar words, "shall include legally adopted persons unless such document clearly indicates a contrary inten-

---

[6] General Statutes § 45-64a (4) provides: "The adopted person shall, except as hereinafter provided, be treated as if he were the genetic child of the adopting parent for purposes of the applicability of all documents and instruments, whether executed before or after the adoption decree is issued, which do not expressly exclude an adopted person in their operation or effect. The words 'child,' 'children,' 'issue,' 'descendant,' 'descendants,' 'heir,' 'heirs,' 'lawful heirs,' 'grandchild' and 'grandchildren,' when used in any will or trust instrument shall include legally adopted persons unless such document clearly indicates a contrary intention. Nothing in this section shall be construed to alter or modify the provisions of section 45-162 regarding children born through A.I.D."

tion." This court has rejected several prior attempts to apply § 45-64a (4) to instruments executed before October 1, 1959, such as the present trust indenture dated April 30, 1957. *Schapira* v. *Connecticut Bank & Trust Co.,* supra, 458–60; *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 208–209, 292 A.2d 899 (1972); *Parker* v. *Mullen,* 158 Conn. 1, 5 n.1, 255 A.2d 851 (1969); *Connecticut Bank & Trust Co.* v. *Hills,* supra. We are not inclined to revise the view expressed in those cases that the legislative selection of the date upon which the revision of the common law effectuated by § 45-64a should become effective precludes a retrospective application of the statute.

In cases where we have concluded the presumption has been overcome that a testator or settlor, other than an adopting parent, did not intend to benefit adopted children because he was a "stranger to the adoption," there has been substantial evidence in the circumstances underlying the creation of the trust or devise indicating a probable intention to include adopted children in the designated class of "issue" or "children." *Parker* v. *Mullen,* supra, 4–5 (testimony that testator's attorney had advised him that use of the word "children" rather than "issue" would allow an adopted child, for whom the testator had expressed a desire to provide, to benefit from a designation of "children" as remaindermen); *Mooney* v. *Tolles,* 111 Conn. 1, 10–11, 149 A. 515 (1930) (evidence that testator knew and approved of the adoption and had the opportunity to change her will to exclude her son's adopted child from testamentary trusts created for benefit of "children" of son as remaindermen); *Ansonia National Bank* v. *Kunkel,* supra, 753–54 (evidence that testator knew his sister's adopted child, that he was her godfather and had a close relationship with her, that he realized his bequest to the "issue" of his sister could refer only to her adopted child, and that he had used the terms

"issue" and "children" interchangeably in his will). No similar circumstances have been presented in this case. None of the persons claiming to be beneficiaries of the trust by virtue of their adoption into the Coffin family were known to the settlor in 1957 when he created it, because all of these adoptions occurred afterward. The usual meaning of the word "issue" as connoting a blood relationship must prevail, therefore, unless the considerations advanced by those adopted into the Coffin family are sufficiently persuasive to overcome this common law presumption. Only in that event would it be necessary, in order to decide whether adopted-ins are beneficiaries, to consider the effect of the settlor's express exclusion of "adopted persons" from the class of "issue" that he has designated as beneficiaries of the trust.

The first contention of those adopted into the Coffin family is based on the juxtaposition of the phrase "adopted persons" with the sentence specifically excluding from his largesse the settlor's grandson, Robert L. Olmstead, who was the only person who had been adopted either into or out of the Coffin family in 1957 when the trust was created. Robert was the son of Dexter, Jr., by his first wife. Because the settlor clearly intended that Robert not be included as a beneficiary, it is suggested that the settlor added the second sentence solely to achieve the same result for any other child who might be adopted out of the Coffin family. There was evidence, however, that the settlor had explained his refusal to include Robert on the ground that he had already provided for him. Testimony was presented that the settlor had paid $100,000 for Robert's benefit in order to acquire some stock of the corporation the settlor controlled, C. H. Dexter Corporation. This stock had left the Coffin family when Dexter D. Coffin, Jr., and his first wife were divorced. After the divorce, she married Frederick Olmstead,

who later adopted Robert. Relying upon this evidence, the trial court concluded that "[t]he sole reason for the exclusion of Olmstead was that he had been taken care of in another fashion." In view of this finding, which is reasonably supported by the evidence, there is no basis for inferring that the settlor intended his exclusion of "adopted persons" to apply only to those who, like Robert, had left the Coffin family.

The fact that the settlor provided for a distribution of the trust corpus to his heirs at law in the absence of surviving issue of his sons hardly indicates a desire that adopted and natural children should share equally, because this provision would become effective only in the absence of natural children or blood descendants of the two sons of the settlor. Because heirs at law may benefit only in the event that there are no surviving issue when the trust terminates, this provision demonstrates a clear preference for blood descendants over other relatives.

Although the naming of Joyce C. Coffin, the second wife of Dexter D. Coffin, Jr., as a beneficiary of the trust does indicate that the settlor intended to benefit someone not of his blood, that circumstance is of little significance in determining his intention in respect to other persons not so named and, in particular, those referred to as "adopted persons."

The presumption against disinheriting heirs at law in this case has certainly been overcome by the expressed intention of the settlor to limit the beneficiaries of the trust, with the exception of Joyce, to the issue of his sons and to exclude heirs at law who are "adopted persons," so long as there are any surviving blood descendants of either of his sons.

We conclude, therefore, that even without the express exclusion of "adopted persons" from the class of "issue" designated as beneficiaries of the trust, there are no circumstances that can reasonably be claimed

to overcome the common law presumption that the term issue connotes only descendants of the blood. We agree with the trial court that those adopted into the Coffin family are not beneficiaries of the trust.

B

We must next decide whether descendants of Dexter D. Coffin, Jr., related to him by blood but who have been adopted out of the Coffin family, are beneficiaries of the trust. One of Dexter, Jr.'s natural children, Robert Olmstead, and one of Dexter III's natural children, Kathryn Blaire Greenhalgh, were adopted by men whom their mothers married after termination of their marriages to their fathers by divorce. No claim to be a beneficiary has been made by Robert Olmstead, whom the settlor excluded by name from inclusion in the term "issue." Kathryn Blaire Greenhalgh is presently the only living person adopted out of the family who claims to be a beneficiary of the trust. The trial court has awarded her that status, concluding that she fell within the settlor's definition of "issue."

The primary meaning of "issue," when used in a trust or will, is "heirs of the body, and includes descendants in every degree." *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 66, 112 A. 689 (1921). Since the term is regarded as having a genetic connotation, it must be taken to include all blood descendants of Dexter D. Coffin, Jr., unless they are within the class the settlor specifically intended to exclude as beneficiaries by stating that "[t]he term 'issue' as used in this trust indenture is not intended to include adopted persons and their issue." The settlor apparently recognized that Robert Olmstead, who had been adopted out of the Coffin family, was included in the term "issue" and, for the purpose of excluding him as a beneficiary, referred to him by name rather than rely on the general exclusion of "adopted persons." If the general exclusion of "adopted persons" were intended to apply

to those issue who have been "adopted out" of the family, it would be redundant of the preceding exclusion of Robert by name. On the other hand, redundancy is not an uncommon characteristic of legal documents and the presumption that no part of a written instrument should be deemed superfluous, viewed in the context of the real world of the practice of law, must be treated as far from conclusive. "It is to be assumed . . . that a [settlor] intends that all the provisions of his [trust] shall be operative; but that assumption cannot be pressed to the point where a provision is to be given an effect beyond the intent expressed in it." *Hills* v. *Hart,* 136 Conn. 536, 543, 72 A.2d 807 (1950).

Most of the cases that have considered the effect of an adoption out of his family of birth upon a child who otherwise would come within the class of "issue" designated as beneficiaries of a trust or bequest have held that such a child is entitled to participate as a member of the class. In Pennsylvania, it has been held that provisions for a distribution to "issue" or "issue per stirpes" of a life tenant are intended to include his natural children who have been adopted out of his family. *Matter of Tracy,* 464 Pa. 300, 346 A.2d 750 (1975); *Taylor Estate,* 357 Pa. 120, 53 A.2d 136 (1947). This result was reached despite the existence of a statute, like General Statutes § 45-64a (6),[7] that bars an adopted child from inheriting from or through his natural relatives. Similar decisions have been rendered by other courts. *Monroney* v. *Mercantile-Safe Deposit & Trust Co.,* 291 Md. 546, 435 A.2d 788 (1981) ("children" construed to include adopted-out child); *Amoskeag Trust Co.* v. *Haskell,* 96 N.H. 89, 70 A.2d 210, reh. denied and opinion modified, 96 N.H. 89, 71 A.2d 408 (1950)

---

[7] General Statutes § 45-64a (6) provides: "The genetic parent or parents and their relatives shall have no rights of inheritance from or through the adopted person, nor shall the adopted person have any rights of inheritance from or through his genetic parent or parents and their relatives, except as provided in this section."

("descendants" construed to include adopted-out children); *In re Wolf,* 98 N.J. Super. 89, 326 A.2d 166 (1967), cert. denied, 51 N.J. 273, 239 A.2d 662 (1988) ("issue" construed to include adopted-out child); *Estate of Zastrow,* 42 Wis. 2d 390, 166 N.W.2d 251 (1969) ("children of the body" construed to include adopted-out children).

In the cases holding to the contrary cited in the briefs, the courts purport to have found in statutes similar to § 45-64a (6) some overriding public policy, of which the settlor or testator was presumed to have been aware, which bars adopted children from inheriting from their genetic parents. *Estate of Russell,* 17 Cal. App. 758, 95 Cal. Rptr. 88 (1971); *Matter of Estate of Best,* 66 N.Y.2d 151, 485 N.E.2d 1010, 495 N.Y.S.2d 345 (1985). Although § 45-64a (6) of our adoption statutes contains a like prohibition applicable to intestate distributions, we have rejected the notion that to allow an adopted-out child to inherit from a natural parent who has died in Connecticut is contrary to our public policy, when such a right of inheritance is given by the state in which the adoption occurred. *Slattery* v. *Hartford-Connecticut Trust Co.,* 115 Conn. 163, 161 A. 79 (1932). "Recognition of it here would not be injurious to our public rights or violate our positive laws. Nor is it so opposed to any established policy of our own that there is sufficient reason for us to refuse to recognize it." Id., 167. We agree with the courts that have held that statutes precluding an adopted child from inheriting from his natural parents or relatives apply only to intestate distributions and are of little significance in ascertaining the intention of a donor in using such a term as "issue" to designate his intended beneficiaries. *Monroney* v. *Mercantile-Safe Deposit & Trust Co.,* supra; *Matter of Tracy,* supra. Indeed our legislature presumably entertained the same view, that the scope of § 45-64a (6) and its predecessors was limited to intestate distribution, because otherwise the enactment of § 45-64a (4), spe-

cifically addressing the use of such words as "issue" in instruments executed after October 1, 1959, would have been superfluous.

In *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 119 A. 218 (1922), this court held that a child who had been adopted out of the family of her deceased natural father, the son of a life tenant of a testamentary trust established by the child's great grandfather, could not participate in a distribution of the remainder of the trust as one of the "lawful issue" of her grandfather, the life tenant, because she had no vested interest in the remainder at the time of her adoption and had ceased to be the child of her natural father by virtue of a statutory predecessor of § 45-64a (6) providing that an adopted child "shall not inherit estate from its natural parents or their relatives." General Statutes (1918 Rev.) § 4879. The present case may be distinguished on the ground that the interest of Kathryn Blaire Greenhalgh as one of the income beneficiaries of the trust vested upon her birth. To the extent that the opinion in *Stamford Trust Co.* may have relied upon a statute plainly applicable only to intestate distributions in construing the term "lawful issue" not to include an adopted-out child, however, it is overruled.

The exclusion of "adopted persons" as beneficiaries of the trust is ambiguous in that it conceivably may refer to those adopted into the Coffin family, to those adopted out of the family, or to both. The purpose of the exclusion would, of course, be wholly defeated if the phrase were construed to apply to neither of these classes of adopted persons, because it then would be of no effect. Because of the ambiguity, the trial court admitted testimony concerning the settlor's intention in using the phrase "adopted persons." David L. Coffin, a son of the settlor for whose benefit a trust similar to that established for Dexter D. Coffin, Jr., had also been established in 1957, testified that his father had declared that he had "a strong feeling that benefici-

aries should follow the blood lines." Relying upon this testimony and the more common usage of the word "adopted" to refer to children who are joining rather than leaving a family, the trial court concluded that the "Settlor intended that his blood relatives take" and "would not want a blood relative who was receiving benefits under the Trust, or was likely to become entitled to receive such benefits to be cut off merely by an adoption." Accordingly, the court held that Kathryn Blaire Greenhalgh was a beneficiary of the trust.

"Testimony of declarations of a decedent introduced to show his state of mind is not excluded by the hearsay rule." *Kukanskis* v. *Jasut,* 169 Conn. 29, 36, 362 A.2d 898 (1975); *Babcock* v. *Johnson,* 127 Conn. 643, 644, 19 A.2d 416 (1941). Since it was not erroneous for the court to admit or to credit this testimony, there is little basis for claiming that it was erroneous for the court to infer from such evidence that the settlor would not want the issue of his son, Dexter, Jr., to be "cut off" in the event of their adoption out of the family. We have indicated that the settlor's reference to "adopted persons" is ambiguous in the context of this case. The trial court did not abuse its discretion as trier of fact in resolving that ambiguity on the basis of the testimony concerning the settlor's intention.

### C

The trial court refused to order payment from the trust of counsel fees and other litigation costs incurred by the children born to Mary K. Elliott, the third wife of Dexter D. Coffin, Jr. These children were adopted by Dexter, Jr., after the marriage and they claimed unsuccessfully to be beneficiaries of the trust by virtue of their adoption into the Coffin family. Others having the same status as the Elliott children by virtue of having been adopted into the Coffin family did receive an award from the trust estate for their litigation

expenses, even though they also did not prevail on the merits of their claim to be beneficiaries.

When the plaintiff as cotrustee brought this action for a declaratory judgment because of its uncertainty over the construction of the term "issue," it sought such relief only with respect to Kathryn Blaire Greenhalgh, who had been adopted out of the Coffin family. With respect to certain other children of Dexter D. Coffin III the plaintiff sought only a determination of paternity in the same suit. At that time the plaintiff apparently entertained no doubt concerning whether children adopted into the Coffin family were beneficiaries of the trust and had concluded that they were not.

After this action had been brought, the Elliott children moved to intervene, claiming to be "issue" of Dexter D. Coffin, Jr., by virtue of their adoption into his family. After this motion had been granted, the plaintiff moved for summary judgment against the Elliott children on the ground that adopted children were excluded from the trust. The court, *Byrne, J.,* concluded, however, that the factual issue of the settlor's intention could not be determined without a trial and denied the motion for summary judgment. After this denial, the plaintiff amended its complaint to add children born to Joanne Fogerty, the third wife of Dexter D. Coffin III, prior to their marriage. These children were adopted by Dexter D. Coffin III after the marriage. Another child, born to Elaine Van Schoonmaker before she became the second wife of Dexter D. Coffin III and adopted by him after the marriage, had been made a party in the original complaint in order to resolve the question of his paternity. The amendment to the complaint adding the Elliott and Fogerty children as parties for the purpose of determining the rights of children adopted into the Coffin family also included an amendment concerning the status of the Van Schoonmaker child in this respect. The finding that Dexter Coffin III was not the natural father of this child made

it necessary to decide his claim as an adopted-in child, but the plaintiff had never sought such a determination originally.

The trial court denied an allowance for the litigation expenses of the Elliott children, while granting such an allowance for the others asserting unsuccessfully the same claim, that adopted children were "issue," because the Elliotts, unlike the others, had voluntarily intervened in the suit. The Elliotts attack this ruling on the grounds that: (1) General Statutes § 52-251[8] mandates payment of counsel fees and expenses of all parties to the proceeding; (2) no proper distinction can be made between them and the other children adopted into the Coffin family in respect to an allowance for expenses incurred in this case; and (3) the reason given by the court for denying an award to them, that their intervention had not benefited but had harmed the trust, was unsound.

Section 52-251 provides for an allowance of counsel fees and expenses in actions "for the construction of a will or for the advice of the court as to the administration of an estate or trust under a will or trust instrument" brought only by fiduciaries. "The statute should be so construed as to limit it to proceedings fairly falling within its terms." *Connecticut Bank & Trust Co.* v. *Hurlbutt,* 157 Conn. 315, 329, 254 A.2d 460 (1968). Despite the mandatory form of language, that "there shall be allowed to each of the parties to the proceeding such reasonable sum for expenses and counsel fees as the court, in its discretion, deems equitable," we have held even in cases where the statute is applicable

---

[8] General Statutes § 52-251 provides: "In any action brought to a court of equitable jurisdiction for the construction of a will or for the advice of the court as to the administration of an estate or trust under a will or trust instrument, by any person acting in a fiduciary capacity thereunder, there shall be allowed to each of the parties to the proceeding such reasonable sum for expenses and counsel fees as the court, in its discretion, deems equitable. The allowance shall be taxed as costs in the action, to be paid out of the estate."

that equitable principles control. *Ansonia National Bank* v. *Kunkel,* supra, 755. We have construed a statutory predecessor of § 52-251, containing the same imperative language, as "merely declaratory of the existing rules of chancery practice." *Security Co.* v. *Pratt,* 65 Conn. 161, 175, 32 A. 396 (1894). We have declared that the allocation of the burden of payment of counsel fees and expenses "is to be ascertained and determined on equitable principles." *Hartford-Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 175, 104 A.2d 356 (1954). Thus, we reject the Elliotts' contention that their successful intervention as parties, as confirmed by the denial of the motion for summary judgment against them, entitled them to an award under § 52-251 without regard to equity.

The equitable consideration relied upon by the trial court was that the Elliotts were interlopers in a proceeding that originally did not involve them. The beneficent purpose of § 52-251 is to make it possible for fiduciaries to obtain a binding resolution of questions that give them serious concern in the performance of their duties. It is not a vehicle available to others who seek to raise issues that do not trouble the fiduciaries. The Elliotts, of course, were not foreclosed from pursuing their claim to be beneficiaries in a separate suit against the trustees, but in that event would have had to bear their own litigation expenses, at least if they were unsuccessful.

Although the other adopted-in children have the same status as the Elliotts under the trust indenture, they were not interlopers in this case but, except for the Van Schoonmaker child, who had been made a party in the original complaint in regard to the issue of his paternity, were joined as defendants by the plaintiff after the Elliotts had successfully intervened. Apparently the trustee at that point decided that, since the beneficiary status of the Elliotts as children adopted into the Coffin family had to be resolved, all of those who had

been similarly adopted into the family should have the opportunity to participate in the litigation. Under such circumstances, § 52-251 is clearly applicable, because it is intended to relieve parties whom a fiduciary deems it necessary to join in a suit for advice from the expenses they have incurred as a result of the action taken by the fiduciary. The trial court, therefore, did not abuse its discretion in limiting the applicability of § 52-251 to those who had been brought into the case by the plaintiff and caused to incur expenses that otherwise may never have occurred.

The claim of the Elliott children that they have conferred a benefit on the trust by obtaining the resolution of an important issue in the construction of the trust indenture and thus are entitled to have their expenses paid is unsound. The court found that as a result of this intervention the trust had become obliged to reimburse the other adopted-in children for the substantial expenses they had incurred as a result of the intervention by the Elliotts. The trust would not have been required to bear any such cost if the Elliotts had simply brought an action against the trustees directly in pursuit of their claim to beneficiary status. Since the view of the trustees that no serious question could be raised concerning the exclusion of adopted-in children from the trust has now been vindicated, it is difficult to perceive how the formal resolution of this issue has benefited the trust.

There is no error in the first case.

II

In the second action, in which the trial court approved the trustees' account of the administration of the 1957 trust from its inception until May 2, 1984, but rejected the agreement for settling the federal court suit, only the latter portion of the judgment is challenged on appeal. All of the parties to the agreement, except the

plaintiff trustees, who adopt a neutral stance, claim error in the court's refusal to approve the agreement and the trust modifications it entails.

The federal court action was brought by Joyce C. Coffin on December 5, 1980, to remove CBT as the corporate trustee. Four children of Joyce from her marriage to Dexter D. Coffin, Jr., intervened in that action, and both he and his present wife, Mary K. Coffin, also intervened. The principal issue in the case is whether CBT abused its discretion by making distributions from the trust to Dexter D. Coffin, Jr., that were excessive while other beneficiaries received little or nothing. Joyce, his former wife, who was named in the trust indenture as a beneficiary, had not received any payment. Mary claimed that, as Dexter's present wife, she was entitled to receive payments from the trust as a beneficiary.

By the end of 1983 the trustees had spent more than $400,000 in legal fees related to this litigation. At that point the parties had taken only one of thirty depositions for which notices had been filed. After numerous settlement conferences extending over a period of thirteen months under the auspices of a federal court magistrate, however, the parties to the federal court action entered into a settlement agreement that the federal district court approved on May 9, 1984.

The agreement provides for a settlement of the various claims of the parties and for a dismissal of the federal court action following approval by the Superior Court of this state of the account of the trustees as well as the terms of the settlement agreement. The agreement provides for payments from the trust principal of $600,000 each to Joyce C. Coffin and to Mary K. Coffin for the relinquishment of their claims to be beneficiaries of the trust and of $185,000 to Dexter D. Coffin, Jr., and to each of five children born to him. Of future income distributions from the trust, Dexter

will receive one half, and the remaining half will be divided among his five natural children. If the income of the trust is insufficient to pay at least $350,000 per year to Dexter and $50,000 to each of his five natural children, the principal will be used to provide the funds required.

The agreement modifies the spendthrift provisions of the trust in respect to Dexter D. Coffin, Jr., by removing the authority of the trustees to withhold from him the payment of his share of the income of the trust, while retaining this authority for other beneficiaries. It provides, however, that the income distributed from the trust to any beneficiary, including Dexter, Jr., "shall not be subject to assignment or alienation." The parties construe this provision to invalidate a voluntary transfer by Dexter, Jr., of his right to receive future income from the trust.

In its memorandum of decision the trial court gave three reasons for disapproving the settlement agreement: (1) it "is clearly not in the best interests of the minor and unascertained beneficiaries"; (2) it "severely modifies the Settlor's intentions in regard to spendthrift provisions"; and (3) "by the payment to Mary, [it] seeks to expend trust funds for purposes never contemplated by the wording of the Trust." In its memorandum denying the defendants' motions to set aside the judgment, the court expressed concerns that the settlor's purpose in inserting the spendthrift provisions would be defeated if they were modified in respect to Dexter D. Coffin, Jr., and that a trust modification should be made only when it is necessary to preserve the trust or to protect the interests of the beneficiaries. The court also indicated that it did not question the sufficiency of the consideration given by Mary and Joyce to support the contract, by relinquishing their claims, but stated its belief that "Mary's claim is a poor one and significantly less viable than Joyce's."

In response to a directive from this court, the trial court further explained the reasons for its conclusion that the agreement was not in the best interests of the minor and unascertained beneficiaries. Despite the past history, the court "assumed that the corporate Trustee would fulfill its obligations under the Trust fairly and in accordance with the law" and that, after the date of its decision, all of the beneficiaries would be treated equally in accordance with the "language of the Trust and not in accordance with any theory that there exist 'primary' and secondary beneficiaries," as Dexter D. Coffin, Jr., had claimed. The court opined that the settlement placed the trustee in a "contractual straightjacket that requires preferential treatment" for Dexter, Jr., never intended by the settlor, to the detriment of the other beneficiaries. The court also referred to the payments "to be made to various parties, some of whom are beneficiaries and two of whom claim to be beneficiaries but have not yet proven their claims."

## A

The court's explanation of its reasons for concluding that the proposed modifications of the trust are contrary to the best interests of minor and unascertained beneficiaries is challenged by the guardian ad litem appointed to represent those beneficiaries, who has approved the changes contemplated. He maintains that the settlement agreement provides greater protection of those interests than is presently afforded by the trust indenture.

During the ten year period, July 1, 1977, through June 30, 1987, Dexter D. Coffin, Jr., had received $4,305,760.99 from the trust, including $1,057,000 from principal, an average of $430,576 annually. Payments had been made to five of his natural children: Dexter III, $811,860.15; Edward, $569,204.59; Martha, $521,127.58; Laura, $478,132.49; and Windsor, $540,605.47. In making these distributions the trustees have generally followed a formula of paying one half the annual income to Dexter, Jr., and one tenth to each of the five chil-

dren named. The court found the value of the trust to be $35,000,000 at the time of trial, 87.9 percent of its assets being represented by the common stock of the Dexter Corporation, a publicly traded multinational corporation. It was also estimated that the trust would not terminate until about forty years from the date of trial, based upon the life expectancies of the eight persons named in the trust indenture to establish its duration.[9]

Because the settlement agreement would prevent any substantial[10] invasion of the trust corpus for the benefit of Dexter, Jr., unless his share of the annual income should fall below $350,000 in a particular year, it does restrict any further invasion of the corpus for his benefit in such a manner as probably to avoid such a depletion ($1,057,000) as had occurred during the ten years before trial. Although the finding does not indicate that any of the sums paid to his children in the past have been taken from principal, the provision of the agreement that payments from principal for the benefit of the children are to be made when their share of the income falls below $50,000 each implicitly restricts the

[9] Paragraph First provides in part: "FIRST: In consideration of the covenants hereinafter contained, the grantor transfers and assigns to the trustees the property described in Schedule A hereto annexed, to hold the same and any property into which the same or any part thereof may from time to time be converted (all such property being hereinafter called the 'trust fund') IN TRUST during the lives of the grantor's sons Dexter D. Coffin, Jr. and David L. Coffin, the grantor's daughter-in-law Joyce C. Coffin and Dorothy Barbara V. Coffin, and his grandchildren Dexter D. Coffin, III, Edward M. Coffin, Deborah L. Coffin and David L. Coffin, Jr., and until the death of the survivor of the grantor's said sons, daughters-in-law and grandchildren."

[10] Paragraph 5 of the settlement agreement provides as follows: "5. CBT may make distributions of the principal of the 1957 trust to a beneficiary, against future income distributions or otherwise, in the application of its discretion as provided in the trust instrument, subject to such mortgage or other safeguards as it deems necessary to protect the interests of that beneficiary and the other beneficiaries, and provided such distributions do not materially reduce the current income distributable to the remaining beneficiaries pursuant to paragraph 4 of this agreement. In making any distributions other than the distributions fixed in paragraphs 1, 2, 3 and

discretion of the trustees, heretofore unlimited, to invade the corpus for the benefit of these children by subjecting principal distributions to them as well as other beneficiaries to the limitation that such distributions may not materially reduce current distributable income. It can hardly be disputed that the provisions of the agreement limiting the presently unrestricted authority of the trustees to invade the corpus for the benefit of the present life beneficiaries of the trust gives the minor and unascertained beneficiaries substantial protection not provided by the original trust indenture.

The agreement, however, provides that the sums of $600,000 each to be paid to Joyce C. Coffin and to Mary K. Coffin, as well as $185,000 each to be paid to Dexter, Jr., and five of his children are to be made from the trust principal. This total reduction in the trust corpus of $2,310,000 is not negligible even for a trust valued at $35,000,000, but it does eliminate claims that potentially would require the payment from the trust of much more to the parties in the federal court action, if they were successful. In addition, that sum may well be exceeded by the cost to all the beneficiaries of litigating to a conclusion the multiplicity of claims in the federal court action, based upon the expenses incurred by the trust prior to the settlement.

In further articulating the reasons for its conclusion that the settlement was contrary to the interests of minor and unborn beneficiaries, the trial court expressed concern that under the settlement agreement CBT would be *obliged* to pay one half of the

---

4 of this agreement, CBT shall be entitled, but not required to consider other resources of the beneficiaries."

All of the parties stipulated that "materially reduce" in this paragraph should read "substantially reduce." This restriction in principal distributions to those not substantially reducing current income is a significant modification of the "absolute and sole discretion" standard for both income and principal distributions contained in the 1957 trust instrument.

income to Dexter, Jr., as it had been doing previously in the exercise of its "absolute and sole discretion . . . without requirement . . . to maintain any equality in the amounts paid" under the trust indenture. The court apparently viewed the instrument to entitle each of the present income beneficiaries, Dexter, Jr., and five of his children, to an equal share. This construction of the indenture, however, is plainly contrary to its language, which undeniably authorizes an unequal division of the income.

In the federal court action four adult natural children of Dexter, Jr., claimed that CBT had abused its discretion because of the disproportionate distributions made to him, despite the express disavowal in the indenture of any requirement for an equal division of income. These claims were never fully litigated because a settlement was reached. The settlement agreement curtailed the discretion CBT had previously exercised in distributing the trust income. All but one of the persons primarily concerned with that aspect of the agreement, Dexter, Jr., and his four adult children, are under no disability and are best able to judge their own interests in restricting the discretion formerly exercised by CBT and in thus removing a source of discord within the family. The interest of the fifth child, who is a minor, is the same as that of these adult children and his guardian ad litem has also approved the agreement.

Although the minor and unborn beneficiaries are also bound by the continuance for his lifetime of the prior practice of allocating one half the income to Dexter, Jr., they will not be entitled to any share of the income until their parents die unless CBT exercises its discretion, as provided in the settlement agreement, to distribute a parent's share of income to his child. It is possible that one or more of Dexter, Jr.'s children may predecease him, but not probable. In any event, these minor and unborn beneficiaries do gain from the agreement the same protection as their parents from distri-

butions to Dexter, Jr., that exceed one half the trust income and from any distribution of principal, unless his share of the income is less than $350,000, a substantially smaller amount than his average annual share of $430,576 in the ten years before trial. We, therefore, see little basis for the trial court's conclusion that minor and unborn beneficiaries will be harmed by the settlement.

## B

Another concern of the trial court was that the administration of the spendthrift provisions in respect to Dexter, Jr.'s share of the income of the trust would defeat the settlor's purpose of protecting his son from the consequences of immaturity, prodigality or misadventure. In 1957, when the trust was created, Dexter, Jr., was about one half of his present age of approximately sixty-six years. After termination of his first two marriages by divorce, his third marriage has lasted since 1969.

"If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination." 2 Restatement (Second), Trusts § 337. "If owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, the court will direct or permit the termination of the trust." Id., § 336. The same considerations apply in large measure to the modification of a trust. *Peiter* v. *Degenring,* 136 Conn. 331, 334, 71 A.2d 87 (1949); see *Connecticut Bank & Trust Co.* v. *Hurlbutt,* supra, 315. The consent of those interested in the trust is not required when § 336 is applicable. 2 Restatement (Second), Trusts § 336, comment c. The existence of consent to a particular modification, however, indicates at least that those interested in the trust and most familiar with its operation believe the change will benefit them.

In the present case it is highly probable that the settlor never realized the problems that the provisions of the indenture vesting "absolute discretion" in the corporate trustee to apportion the income among Dexter, Jr., and other beneficiaries without any standard or guide would eventually create. He could never have anticipated that despite the insertion of these spendthrift provisions to protect against the prodigality of any of the income beneficiaries, there would occur an invasion of the trust corpus for the benefit of Dexter, Jr., to the extent of more than one million dollars. It is extremely unlikely that he ever envisioned that his desire to provide so generously for the benefit of Dexter, Jr., and the other beneficiaries, as well as to ensure against their improvidence by giving such broad discretion to CBT, would create such great dissension within the Coffin family and threaten to consume a substantial part of the trust corpus in litigation expenses.

These circumstances, which have arisen since the creation of the trust, may reasonably be deemed to "impair the accomplishment of the purposes of the trust" under § 336 of the Restatement. We are not concerned with whether this impairment is sufficiently substantial to warrant the *termination* of the trust, however, because the settlement involves only its *modification,* a lesser departure from the settlor's plan. The proposed changes apply primarily to Dexter, Jr., removing the authority to withhold his share of the income but also restricting further invasions of the trust corpus for his benefit. The question for us is whether these deviations from the settlor's intent as expressed in the indenture are justified by the benefits the settlement provides in protecting against further invasion of the trust corpus, terminating expensive and complex litigation, and removing a major obstacle to harmonious family relationships.

The concern expressed by the trial court for Dexter, Jr.'s welfare if, at his venerable age, he will now be

able to demand his share of the income as a matter of legal right is not supported by any finding that he is incapable of managing his own affairs at the present time. None of the facts stipulated or evidence presented indicate that CBT has ever withheld his share of the income or that there is likely to be a need for it to do so in the future. Against the gossamer possibility of Dexter, Jr.'s impoverishment upon an annual income exceeding one third of a million dollars, we must balance the reality of the benefits for all the beneficiaries afforded by the settlement agreement and, particularly, the protection of minor and unborn beneficiaries from unlimited invasion of the corpus of the trust for the benefit of income beneficiaries. We conclude that the value of the spendthrift provisions in ensuring against the possibility of Dexter, Jr.'s improvidence is clearly outweighed by the overall benefits that the settlement agreement provides for all the beneficiaries.

## C

The final reason given in the first memorandum of decision for rejecting the settlement agreement was that "by the payment to Mary [it] seeks to expend trust funds for purposes never contemplated by the wording of the Trust." The court took a jaundiced view of Mary's claim to beneficiary status as the present wife of Dexter, Jr., characterizing it as "a poor one and significantly less viable" than Joyce's claim as a beneficiary named by the settlor. Although the first memorandum of decision intimates that any payment to Mary would be contrary to the settlor's intention, the court later declared that it "has never questioned that the consideration which is promised by Mary and that promised by Joyce are each sufficient to support the contract."

Whenever a dispute arises among those claiming to be beneficiaries of a trust or will concerning the interpretation of the instrument and a compromise is reached by them, some deviation from the intention of

the settlor or testator is likely to occur. Courts, nevertheless, have deemed it wise to approve such settlements if they are likely to promote the interests of the beneficiaries without any great departure from the purposes of the donor. A. Scott, Trusts (4th Ed.) § 337.6. "But the court should be convinced that the litigation was undertaken in good faith and that there was reasonable ground for it, since otherwise there is opportunity for imposition on the court and an evasion of the usually prevailing rules regarding the termination of trusts which are active and useful." G. Bogert, Trusts and Trustees (Second) § 1009.

We do not understand the court's reference to Mary's claim as "poor" to imply a lack of good faith or reasonable grounds for its pursuit. The finding that the relinquishment of her claim was a consideration "sufficient to support the contract" indicates that these threshold requirements were satisfied. We conclude, therefore, that the court's doubt about the likelihood that Mary would prevail if her claim were fully litigated was not an adequate reason to conclude that the settlor's intentions would be so greatly thwarted by the payment to her of a sum approximating the estimated cost of further litigation that the settlement should be rejected.

The trial court in rejecting the proposed trust modifications relied upon statements in several cases of the conditions necessary for termination of a trust: "(1) that all the parties in interest unite in seeking the termination, (2) that every reasonable ultimate purpose of the trust's creation and existence has been accomplished, and (3) that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result." *Adams* v. *Link,* 145 Conn. 634, 638, 145 A.2d 753 (1958); *Hills* v. *Travelers Bank & Trust Co.,* 125 Conn. 640, 648, 7 A.2d 652 (1939); *DeLadson* v. *Crawford,* 93 Conn. 402, 411, 106 A. 326 (1919); *Ackerman* v. *Union & New Haven Trust Co.,* 90 Conn. 63, 71, 96

A. 149 (1915). These rules are based upon the fundamental principle that the recipient of a gift must take it subject to any lawful conditions the donor has attached and that the duty of a court is only "to ascertain what the donor directed that the donee should receive and to secure to him the enjoyment of that interest only." *Hills* v. *Travelers Bank & Trust Co.,* supra. "If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination." 2 Restatement (Second), Trusts § 337.

It is apparent that the second and third criteria for termination of a trust have not been fulfilled in this case because the trust was intended to continue until the death of the survivor of eight persons named, including the settlor's four grandchildren living in 1957, and because the proposed modifications do alter lawful restrictions imposed by him. These conditions precedent to termination of a trust under ordinary circumstances, as applied to its modification, must give way when it appears that a substantial impairment of the purposes of the trust is likely to occur unless certain modifications are made in order to resolve problems that the settlor never envisioned. 2 Restatement (Second), Trusts § 336. When the provisions of the trust to be altered have resulted in difficulties harmful to the interests of the objects of the settlor's beneficence, and the proposals do not unnecessarily change the settlor's plan or thwart his purposes, the court should approve them. We conclude that the undisputed facts bring the present case within this principle and that the trial court should have approved the settlement agreement.

There is error in the second case, the portion of the judgment rejecting the settlement agreement is set aside and the case is remanded with direction to approve that agreement.

In this opinion the other justices concurred.